[830 NE2d 287, 797 NYS2d 389]

In the Matter of CHESTERFIELD ASSOCIATES, Appellant, v NEW YORK STATE DEPARTMENT OF LABOR, Respondent.

Argued March 30, 2005; decided May 3, 2005

**POINTS OF COUNSEL**

*Jackson Lewis LLP,* White Plains (*Greg A. Riolo, Thomas V. Walsh* and *Michelle McKee Cubbon* of counsel), for appellant. The annualization regulation, 12 NYCRR 220.2, is invalid because it contradicts Labor Law § 220 (6). (*Weiss v City of New York,* 95 NY2d 1; *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,* 45 NY2d 471; *Matter of Jones v Berman,* 37 NY2d 42; *Kuppersmith v Dowling,* 93 NY2d 90; *Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y.,* 91 NY2d 413; *Matter of National R.R. Passenger Corp. v Hartnett,* 169 AD2d 127; *Matter of Cayuga-Onondaga Counties Bd. of Coop. Educ. Servs. v Sweeney,* 89 NY2d 395; *Matter of Action Elec. Contrs. Co. v Goldin,* 64 NY2d 213; *Matter of Beltrone Constr. Co. v McGowan,* 260 AD2d 870; *HMI Mech. Sys., Inc. v McGowan,* 266 F3d 142.)

*Eliot Spitzer, Attorney General,* New York City (*Benjamin N. Gutman, Michael S. Belohlavek, M. Patricia Smith* and *Pico Paul Ben-Amotz* of counsel), for respondent. I. Annualization is a reasonable method of valuing benefits under prevailing-wage statutes. (*Miree Constr. Corp. v Dole,* 930 F2d 1536; *Tom Mistick & Sons, Inc. v Reich,* 54 F3d 900.) II. Annualizing all fringe benefits is a reasonable means of assuring compliance with the law. (*Matter of Unimax Corp. v Tax Appeals Trib. of State of N.Y.,* 79 NY2d 139; *Matter of New York Assn. of Homes & Servs. for Aging v Commissioner of N.Y. State Dept. of Health,* 87 NY2d 978; *HMI Mech. Sys., Inc. v McGowan,* 266 F3d 142.) III. Annualization does not regulate private work, favor unions, or make it impossible to comply with Labor Law § 220. (*HMI Mech. Sys.,*

*Inc. v McGowan,* 266 F3d 142; *Rondout Elec., Inc. v New York State Dept. of Labor,* 335 F3d 162; *Miree Constr. Corp. v Dole,* 930 F2d 1536; *Commissioners of State Ins. Fund v Eugene Iovine, Inc.,* 5 Misc 3d 487; *New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.,* 514 US 645; *Matter of Action Elec. Contrs. Co. v Goldin,* 64 NY2d 213.) IV. The Department of Labor's past inconsistency in enforcing the regulation does not undermine annualization's legitimacy. (*Burgio & Campofelice, Inc. v New York State Dept. of Labor,* 914 F Supp 931, 107 F3d 1000; *HMI Mech. Sys., Inc. v McGowan,* 266 F3d 142; *General Elec. Co. v New York State Dept. of Labor,* 936 F2d 1448; *Matter of HMI Mech. Sys. v McGowan,* 277 AD2d 657, 96 NY2d 705; *Matter of American Tel. & Tel. Co. v State Tax Commn.,* 61 NY2d 393; *Matter of Varrington Corp. v City of N.Y. Dept. of Fin.,* 85 NY2d 28.)

## OPINION OF THE COURT

READ, J.

Petitioner, Chesterfield Associates, challenges respondent Department of Labor's use of the "annualization" rule (12 NYCRR 220.2 [d]) to assess whether a contractor has fulfilled its obligation under the prevailing wage law (Labor Law art 8) to pay or provide prevailing supplements to employees for work on a public project. For the reasons that follow, we conclude that the Commissioner of Labor reasonably annualized the contributions that Chesterfield made to a profit-sharing plan on behalf of its employees working on the public projects at issue in this case.

## I.

Article I, § 17 of the New York State Constitution declares that

> "[n]o laborer, worker or mechanic, in the employ of a contractor or sub-contractor engaged in the performance of any public work, shall be . . . paid less than the rate of wages prevailing in the same trade or occupation in the locality within the state where such public work is to be situated, erected or used."

The prevailing wage law carries out the constitutional mandate in Labor Law § 220 (3). This provision requires a contractor undertaking a public work project to pay its employees the prevailing rate of wages and to pay or provide them with supple-

ments[1] in accordance with prevailing practices for private sector work in the same locality.

The Commissioner has established and annually updates a schedule of prevailing wages and supplements, expressed as hourly rates and pegged to collectively bargained wages and fringe benefits for different work classifications (carpenters, electricians, painters, etc.) in different localities (*id.*; Labor Law § 220 [5] [a]; 12 NYCRR 220.3).[2] The public entity attaches the relevant prevailing rate schedule to its bid specifications for a public project and to the eventual contract; the schedule must be posted at the job site so that workers know how much compensation they are entitled to receive (Labor Law § 220 [3-a] [a], [b]).

Contractors may provide or pay for supplements by furnishing their employees with benefits whose value matches the relevant supplements, paying the supplements in cash or combining benefits and cash payments (12 NYCRR 220.2 [a]-[b]; *Matter of Action Elec. Contrs. Co. v Goldin*, 64 NY2d 213 [1984]). In short, a contractor may provide supplements in any form or combination so long as the sum total is not less than the prevailing rate.

The Commissioner enforces the prevailing wage law through compliance investigations undertaken in response to a complaint or on his/her own initiative (Labor Law § 220 [7]). After a hearing, the Commissioner may issue an order determining that the contractor is liable for underpayments—the difference between the prevailing wages or supplements that the schedules call for and the sums actually paid or provided to employees—plus interest (Labor Law § 220 [7], [8]). In addition to liability for underpayments, contractors face potential civil and criminal penalties for violating article 8 (Labor Law § 220 [8], [9]).

---

**1.** "Supplements" or fringe benefits include "all remuneration for employment paid in any medium other than cash, or reimbursement for expenses, or any payments which are not 'wages' within the meaning of the law" (Labor Law § 220 [5] [b]).

**2.** The Commissioner issues the schedules separately for "General Construction Projects" (buildings, heavy and highway, tunnel and water and sewer projects) and "Residential Construction Projects" on a county-by-county basis (Labor Law § 220 [3-a] [a]; *see also* <http://www.labor.state.ny.us/business_ny/employer_responsibilities/prevwage/3webwagetypestatus.shtm>, cached at <http://www.courts.state.ny.us/reporter/webdocs/NYSDOL_Business_in_NY_responsibilities_as_an_employer.htm>). The Comptroller of the City of New York, the City's chief fiscal officer, determines the prevailing rate schedules and otherwise enforces article 8 for public projects let by the City (Labor Law § 220 [3], [5] [e]).

The prevailing wage law "has been characterized as an attempt by the State to hold its territorial subdivisions *to a standard of social justice* in their dealings with laborers, workmen, and mechanics" (*Matter of Cayuga-Onondaga Counties Bd. of Coop. Educ. Servs. v Sweeney*, 89 NY2d 395, 402 [1996] [internal quotation marks omitted]). As the Department puts it, section 220 "seeks to equalize competing contractors' labor costs, which ensures that the winning bid on a public project is not made on the backs of the contractor's employees."

Whether a contractor pays a prevailing wage is easy enough to figure out, as wages are received by employees as hourly cash payments or are easily converted into the equivalent. How an employer's fringe benefits relate to a prevailing supplement is less straightforward. Accordingly, the Commissioner has adopted a regulation called the annualization rule (12 NYCRR 220.2 [d]) for computing the hourly cash equivalent of a supplement.

Under the annualization rule, the Commissioner "divide[s] the [contractor's] actual contribution or cost for providing" a benefit "by the total annual hours worked [by employees] on both public and private work" (12 NYCRR 220.2 [d] [1]). The Commissioner then multiplies the "hourly cash equivalent" thus derived by the total annual hours the contractor's employees worked on the public project (which the parties here refer to as "public hours"). The resulting figure acts as a credit to offset the contractor's obligation to pay or provide for supplements.

In this case, the Department received complaints from employees and union representatives that Chesterfield was not paying or providing prevailing wages and supplements on five public projects carried out during 1994 through 1997 to repair certain bridges and roads in Nassau and Suffolk counties. Chesterfield furnished supplements to its employees by way of three categories of fringe benefits: paid vacation, sick days and holidays; health insurance; and pension plans. These benefits were supplied to all of Chesterfield's employees, even those who performed no public work.

Upon investigation, the Department concluded that Chesterfield had underpaid wages and supplements on the projects and the matter went to hearing. The parties stipulated to the figures to be used to calculate the value of Chesterfield's fringe benefits.[3] Further, Chesterfield ultimately conceded that its health insur-

---

3. Specifically, for the 1994-1997 time period the parties stipulated to the amount that Chesterfield contributed on behalf of all of its employees (i.e.,

ance and vacation, holiday and sick pay benefits should be annualized.

Chesterfield disputed use of the annualization rule to calculate the hourly cash equivalent of its contributions for pension benefits, however, and so Chesterfield and the Department computed this credit alternatively. They stipulated that if pension contributions were not annualized and were instead given what Chesterfield calls dollar-for-dollar credit (i.e., if Chesterfield's pension contributions on behalf of employees who worked on the public projects were divided by only the public hours worked by these employees), Chesterfield would be entitled to a credit of $7.92 per hour to offset its supplement obligation;[4] if annualized (i.e., if Chesterfield's pension contributions on behalf of employees who worked on the public projects were divided by the total hours worked by these employees), the credit decreased by approximately two thirds to $2.54 an hour. The practical effect was a swing in Chesterfield's liability for underpayment of supplements from roughly $18,000 (if not annualized) to almost $600,000 (if annualized).

---

those who worked exclusively on private sector work as well as those who worked full or part time on the public projects) to a contractor's benefit trust for health benefits only; the total hours worked by all of Chesterfield's employees; the total hours worked by the employees who worked on the public projects as well as the total public hours worked by these employees (roughly 32% of the total hours worked); the total supplements that the employees who worked on the public projects should have been provided according to the prevailing rate schedule; the vacation, holiday and sick pay that Chesterfield paid to the employees who worked on the public projects; and the pension contributions made by Chesterfield on behalf of the employees who worked on the public projects.

4. The Department evidently often used the dollar-for-dollar methodology to calculate a benefit's hourly cash equivalent even after adopting the annualization rule in 1992. Chesterfield regards the Department's post-1992 forbearance from annualizing as evidence of doubt about its authority to do so. The Department, however, attributes any seeming inconsistencies in its enforcement policies to uncertainty as to how the federal Employee Retirement Income Security Act ([ERISA], 29 USC § 1001 *et seq.*) might affect supplements (*compare General Elec. Co. v New York State Dept. of Labor*, 891 F2d 25 [2d Cir 1989] [prevailing wage law may not be enforced with respect to ERISA benefits], *with Burgio & Campofelice, Inc. v New York State Dept. of Labor*, 107 F3d 1000 [2d Cir 1997] [ERISA does not preempt the State's prevailing wage law because it does not mandate a particular set of benefits]; *see also HMI Mech. Sys., Inc. v McGowan*, 266 F3d 142 [2d Cir 2001] [ERISA does not preempt the Department's implementation of the prevailing wage law using an annualization formula]). The Department did not annualize Chesterfield's pension contributions to determine underpayments until after the Second Circuit's decision in *HMI*.

From 1994 through 1997, Chesterfield made contributions to a profit-sharing pension plan. Under this plan, an employee's rights did not vest immediately; instead, an employee became fully vested (at a rate of 20% per year) only at the end of five years. According to the Department,[5] Chesterfield's contributions to the plan were allocated to individual employees based on their total earnings for the year; that is, without regard to whether or for how many hours the employee worked on a public project.[6]

After nine days of hearings spanning roughly 21 months, the Department's hearing officer issued a report and recommendation concluding, among other things, that the Department had "permissibly and properly" annualized Chesterfield's contributions for pension benefits. He consequently concluded that Chesterfield had underpaid supplements by almost $600,000.[7]

The Commissioner issued a determination and order adopting the hearing officer's findings of fact, conclusions of law and recommendations in their entirety, and Chesterfield commenced this CPLR article 78 proceeding pursuant to Labor Law § 220 (8). The Appellate Division confirmed the Commissioner's determination, denied Chesterfield's petition and dismissed the proceeding. We subsequently granted Chesterfield leave to appeal, and now affirm.

## II.

Chesterfield contests only the annualization of its contributions for pension benefits. Specifically, Chesterfield argues that annualization violates Labor Law § 220 (3) by penalizing

5.  There are no plan documents in the record.

6.  Chesterfield also made small contributions in 1994 to the so-called Plan Data plan, a retirement plan and trust administered by Plan Data, Inc. The Plan Data plan was apparently discontinued during 1994. The record contains no information to describe it, or to show the degree to which any contributions to the Plan Data plan were attributable to the projects and time periods at issue in this case. We therefore limit our discussion to Chesterfield's profit-sharing plan.

7.  The hearing officer also recommended that the Commissioner determine and order that Chesterfield was liable for failure to pay prevailing wages totaling roughly $50,000; that Chesterfield was liable for interest on the underpayment of prevailing wages and supplements at the rate of 16% per year from the date of underpayment to the date of restitution, minus a 19-month period of delay on account of the Department's re-auditing of the public projects; that Chesterfield's failure to pay prevailing wages constituted a single willful violation of Labor Law § 220; and that the Commissioner assess a civil penalty amounting to 10% of the underpaid wages.

contractors unless they provide for supplements at the prevailing rate on both public and private work or, alternatively, pay the supplements in cash.

To prove this point, Chesterfield describes a benefit plan into which a contractor contributes at the prevailing rate for public hours and at a lesser rate for private hours. According to the Department, however, this is a hypothetical plan that in no way resembles Chesterfield's actual profit-sharing plan; Chesterfield's pension contributions were allocated to individual employees based on their total annual earnings and without regard to whether or how many hours they worked on public projects.

Chesterfield also relies on *Tom Mistick & Sons, Inc. v Reich* (54 F3d 900 [DC App 1995]). There, the D.C. Circuit determined that it was unreasonable for the federal Department of Labor to annualize the employer's contributions to a fringe benefit plan established to comply with the Davis-Bacon Act (40 USC § 276a *et seq.* [now 40 USC § 3141 *et seq.*]), the federal prevailing wage law. The contractor in *Mistick*, however, maintained and made contributions to two separate fringe benefit plans—the Davis-Bacon plan for public work only and another fringe benefit plan for private work only. We cannot conclude from this record that Chesterfield similarly maintained and contributed to separate profit-sharing plans for its employees' public and private work.

This appeal does not call on us to engage in "pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]). Rather, we are asked to decide whether the Commissioner applied a reasonable methodology to evaluate Chesterfield's compliance with its obligation under Labor Law § 220 (3) to pay or provide for supplements at the prevailing rate on the five public projects at issue. Accordingly, the Commissioner's determination to annualize Chesterfield's contributions to the profit-sharing plan is entitled to deference (*Matter of Howard v Wyman*, 28 NY2d 434, 438 [1971] ["construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld"]).

Chesterfield seeks credit for the full cost of its contributions to the profit-sharing plan on behalf of employees who worked full or part time on the five public projects. Because Chesterfield contributed to the profit-sharing plan not only for its employees' public work but also for their private work, however, there

was room for shifting costs on paper to overstate its payments on behalf of public hours, which would have bestowed an unfair competitive advantage on Chesterfield and denied its employees the full value of the supplements to which they were entitled. To enforce against this potential cost shifting, the Commissioner chose to average Chesterfield's contributions over all work, both public and private, to which pension benefits might be related. This resulted in a proportionate credit to offset Chesterfield's supplement obligations. We cannot say that the Commissioner acted unreasonably or irrationally in taking this approach under the circumstances of this case.

Nor can we say on this record that annualization regulates private work or forces a contractor to pay cash supplements in lieu of providing fringe benefits (see Rondout Elec., Inc. v New York State Dept. of Labor, 335 F3d 162, 169 [2d Cir 2003] ["New York's annualization regulation does not require prevailing wages or benefits for any employee who works on a private contract. The only time the prevailing wage standard is imposed is when an employee works on a public project"]; see also Miree Constr. Corp. v Dole, 930 F2d 1536, 1546 [11th Cir 1991] ["if an employer chooses to make contributions to a year-long (benefit) . . . such contributions can only be credited on an annualized basis"]). In sum, annualization is a methodology for valuing fringe benefits, which the Commissioner reasonably applied here to compute the hourly cash equivalent of Chesterfield's contributions to its profit-sharing plan.

Accordingly, the judgment of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSEN-BLATT, GRAFFEO and R.S. SMITH concur.

Judgment affirmed, with costs.