OPINION OF THE COURT
Maecy L. Kahn, J.
In this application for class A-I and class A-II drug felony resentencing pursuant to recent amendments to our state’s drug law sentencing scheme, the court must resolve an issue of apparent first impression regarding the eligibility requirements for resentencing on A-II drug felony convictions.
On October 19, 1993, defendant, Ramon Quinones, was convicted of one count of criminal sale of a controlled substance in the first degree (Penal Law § 220.43 [1]), a class A-I felony; two counts of criminal sale of a controlled substance in the second degree (Penal Law § 220.41 [1]), class A-II felonies; and one count of criminal sale of a controlled substance in the third degree (Penal Law § 220.39), a class B felony, following a jury trial. On December 10, 1993, the trial justice[1] imposed indeterminate sentences of 17 years to life for the first degree sale conviction, sentences of 6 years to life for each of the second degree sale convictions, and a sentence of 3 to 9 years on the third degree sale conviction, all terms to be served concurrently.
Defendant has now moved for resentencing on his class A-I and A-II drug felony convictions pursuant to section 23 of the 2004 Drug Law Reform Act (DLRA),[2] section 1 of the 2005 extension of that Act (DLRA-2) (collectively, the Acts),[3] and Penal Law § 70.71. For the reasons stated in this opinion, defendant’s motions for resentencing are granted, and the court’s proposed terms of resentencing are set forth accordingly.
*584 I. Background of the Case
It is uncontroverted[4] that during the course of a long-term police investigation, defendant met on several occasions with an undercover police officer who was posing as a drug and weapons dealer with ties to organized crime. On May 6, 1992, after negotiating a sale of three illegal handguns, defendant agreed to make the sale, but only through an intermediary. Later that day, following defendant’s instructions, the undercover officer exchanged $4,500 for three firearms, an Intratec TEC-9 and two SWD M-lls. The defense does not dispute that these guns are large caliber firearms, each capable of holding up to 30 rounds of ammunition, and are accurately described as “urban assault weapons.” (See Penal Law § 265.00 [22] [d] [vi], [viii].)
Defendant and the undercover officer spoke regularly thereafter. On January 21, 1993, the undercover officer asked defendant to sell him a quantity of cocaine. Defendant provided the officer with a sample which contained approximately 11 grains of cocaine. The two agreed upon a price and on February 9, 1993, defendant, again through an intermediary, provided the officer with a bag containing approximately 13A ounces of cocaine. A similar transaction took place on March 4, 1993, during which defendant provided the officer with in excess of IV2 ounces of cocaine. On March 22, 1993, a final transaction took place in which defendant provided the officer "with approximately 33/4 ounces of cocaine.
On March 29, 1993, as he met to negotiate another sale with the undercover officer, defendant was arrested and charged with criminal sale of a controlled substance in the first degree (Penal Law § 220.43 [1]), two counts of criminal sale of a controlled substance in the second degree (Penal Law § 220.41 [1]), criminal sale of a controlled substance in the third degree (Penal Law § 220.39), and three counts of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]), based on his participation in the four prior sales of cocaine to the undercover police officer. At trial, the jury found defendant guilty of criminal sale of a controlled substance in the first degree (Penal Law § 220.43 [1]), two counts of criminal sale of a controlled substance in the second degree (Penal Law § 220.41 [1]), and one count of criminal sale of a controlled substance in *585 the third degree (Penal Law § 220.39 [l]).[5] The sentencing judge imposed concurrent indeterminate sentences of 17 years to life, 6 years to life, 6 years to life and 3 to 9 years on those counts, respectively.
Under a separate indictment defendant was charged with three counts of criminal sale of a firearm in the third degree (Penal Law § 265.11 [1]). After his sentencing in the instant case, defendant pleaded guilty to a single count of criminal sale of a firearm in the third degree in fall satisfaction of that indictment, and received a definite sentence of one year imprisonment, to be served concurrently with sentences in the instant case.
II. Drug Law Reform Legislation
The enactment of both the DLRA and the DLRA-2 were the legislative responses to years of nearly universal calls to amend New York’s excessively punitive drug laws. These acts comprise a complex scheme of significant revisions to the Penal, Criminal Procedure, Correction and Executive Laws relating to felony level drug offenders.
The revisions include changes in the definition of class A felony drug possession crimes; substitution of a determinate sentencing scheme for all drug-related felony offenses; modification to the formulas for calculating the service of terms of incarceration; revisions to the rules of the correctional system regarding the conditional and temporary release of inmates from incarceration; authorization for court-ordered substance abuse treatment for drug offenders sentenced to state prison; establishment of a resentencing option for those sentenced to life terms on conviction of A-I and A-II felony drug offenses under prior law; early termination of parole for some drug offenders; and shortened periods of postrelease supervision for drug offenses.
The resentencing schemes are found in section 23 of the DLRA and in section 1 of the DRLA-2. Section 23 of the DLRA provides that any person who was convicted of an A-I drug felony and was sentenced under the old law (Penal Law § 70.00) to an indeterminate life-term.prison sentence having a minimum term of 15 years, and who is currently serving a state prison sentence pursuant to that judgment, may apply for resentencing to a determinate term in accordance with Penal Law § 70.71. Section 1 of the DRLA-2 permits a person who was *586 convicted of an A-II drug felony and was sentenced under Penal Law § 70.00 to an indeterminate life-term prison sentence having a minimum term of three years to apply for that same resentencing relief, where the individual is more than 12 months from being an eligible inmate as that term is defined in Correction Law § 851 (2), and meets the eligibility requirements for earning a merit time allowance under Correction Law § 803 (1) (d).
The procedures to be followed under both sections provide that the court must offer an opportunity for a hearing at which the defendant is present, and thereafter make findings of fact. (L 2004, ch 738, § 23; L 2005, ch 634, § 1.) The court may consider any relevant facts or circumstances offered by the parties, and may, in addition, consider the institutional records of confinement of the defendant in determining whether he or she qualifies for resentencing. (Id.) Both sections also require that a court shall specify and inform the defendant of the term of the determinate sentence which it would be inclined to impose “as authorized for [the particular class A] felony by and in accordance with section 70.71 of the penal law,” unless substantial justice dictates that the application should be denied. (Id.) Additionally, the court must inform the defendant that unless he or she withdraws his or her application, the court will enter an order vacating the original sentence and imposing its proposed determinate sentence pursuant to Penal Law § 70.71. (Id.)[6] Finally, both sections provide that the time previously served under the vacated sentence will be credited toward the new determinate sentence.
III. The Instant Resentencing Motions
A. Contentions of the Parties
1. Initial Submissions
On August 12, 2005, defendant, through his counsel, moved pursuant to the DLRA for resentencing on his class A-I conviction to a determinate sentence of 10 years, followed by five years of postrelease supervision. (Defendant’s affirmation in *587 support of [A-I] resentencing, filed Aug. 12, 2005 [defendant’s A-I affirmation].) After the enactment on August 30, 2005 of the DLRA-2, defendant filed a supplemental motion for resentencing on his A-II convictions,[7] seeking resentencing to concurrent determinate sentences of six years on each such count, again to be followed by five years of postrelease supervision. (Defendant’s supplemental affirmation for A-II resentencing, filed Oct. 5, 2005 [defendant’s A-II affirmation].) The People filed their response to both motions (People’s affirmation in response to the defendant’s petition for resentence, filed Nov. 28, 2005 [People’s response]), conceding defendant’s eligibility for resentencing on both his A-I and A-II convictions, and acknowledging that substantial justice did not dictate that the applications be denied. The People, nevertheless, urged that the terms of defendant’s new sentences be 20 years on the A-I count and 10 years on each of the A-II counts, based primarily on various preoffense, uncharged bad acts allegedly committed by defendant. The defense filed a reply objecting to any consideration by this court of defendant’s alleged uncharged crimes. (Defendant’s reply affirmation in support of motion for A-I and A-II resentencing, filed Dec. 1, 2005 [defendant’s reply].) On December 2, 7, and 16, 2005, a hearing was held in accordance with section 23 of the DLRA and section 1 of the DLRA-2, with defendant present and represented by counsel.
2. December 2, 2005 Hearing
At the initial session of the hearing, on December 2, the parties agreed that certain facts were not in dispute. Specifically, defendant’s conduct during the course of the undercover investigation and his criminal history resulting from that investigation were conceded at the hearing. In addition, the parties agreed that defendant’s disciplinary history while incarcerated revealed that during his approximately 12 years of incarceration to date, defendant has received a total of three tier II violations and four tier III violations.[8] Three of the tier III infractions resulted in defendant’s placement in a special housing unit (SHU), the punishment imposed for the most seri *588 ous infractions.[9] Three of the tier III incidents occurred in 1995, during defendant’s early years of confinement. Defendant’s most recent tier III infraction took place more than three years ago, while his most recent tier II infraction occurred 17 months ago, and resulted in his receipt of 23 days of keeplock[10] time. Defendant has incurred no additional disciplinary infractions since that incident.
Also uncontested at the first session of the hearing was the accuracy of a document concededly generated by the Department of Correctional Services (DOCS or the Department) on or about September 28, 2005, entitled “Merit Eligible A-2 Drug Offenders with 36 months or longer to PE Date,” submitted by defendant as evidence of his eligibility to earn merit time. (Defendant’s A-II affirmation, exhibit D [merit eligibles list].) This document lists defendant as one of eight such “Merit Eligible A-2 Drug Offenders” in New York County having coexisting A-I felony drug convictions.
Notwithstanding their concession that the defendant was entitled to resentencing on all three counts, the People also proffered at the initial hearing session hearsay evidence for the purpose of establishing that defendant has had a substantial history of violent behavior. The People’s principal source of this information is defendant’s former companion and coindictee, MaryAnn Henderson, who entered into a cooperation agreement with prosecutors and, the People maintained, proved to be a reliable confidential informant. They averred that Ms. Henderson, who is now deceased, reported that prior to his incarceration in the instant matter, defendant was responsible for the murder of a manager of a hotel on 13th Street, and that in a separate incident, he had directed the murder of a prostitute in the same neighborhood. Henderson also told prosecutors that defendant had been physically abusive to her, that he had frequently sold drugs from a building located at 222 East 13th Street, and that he was planning to expand his crack selling business to Newark, New Jersey. The People also claimed that an unidentified source had informed them that defendant had put out a $2,000 contract on the life of someone whom he suspected of being a cooperating witness against him. It is *589 uncontested that defendant was never charged with any of these alleged offenses.
Defendant opposed the court’s consideration of these hearsay claims attributed to Ms. Henderson and the unknown source, arguing that the information was unreliable (see, People v Naranjo, 89 NY2d 1047 [1997]).
The defense further urged this court not to consider the defendant’s conviction for criminal sale of a firearm in determining the appropriate sentence in this case, because it had not been before the original sentencing judge. Defense counsel argued that the sentencing court had been aware of the pending indictment in that case, but expressly chose not to consider it. Defendant maintained that such determinations of the original sentencing judge should be binding on this court.
At the conclusion of the December 2 session of the hearing, the parties and the court discussed the effect of defendant’s receipt of merit time on his potential release date under the respective resentencing scenarios sought by the parties. The defense had received limited information from DOCS, but both the parties and the court believed that additional information was necessary to a full and accurate understanding of defendant’s circumstance. Accordingly, with the consent of the parties, the court agreed to contact Richard DiSimone, Esq., Associate Counsel-in-Charge, Office of Sentencing Review of the New York State Department of Correctional Services, to inquire concerning the effect of defendant’s good time and merit time on his possible release dates, were he to be resentenced. (Correction Law § 803.)
In a series of telephone conversations, Mr. DiSimone advised the court that the September 28, 2005 merit eligibles list which DOCS had provided to defense counsel was in error in reflecting the defendant as being “Merit Eligible.” According to DiSimone, DOCS had determined that merit time would not be granted to defendant Quinones, due to his disqualifying disciplinary record. Specifically, DiSimone stated that DOCS had withheld merit time from defendant based on his having incurred a “serious disciplinary infraction” (Correction Law § 803 [1] [d] [iv]; 7 NYCRR 280.2 [the regulation]), in that he had served as a result of his several infractions, on a cumulative basis, in excess of 60 days of SHU or keeplock disciplinary time during the course of his incarceration in state prison. DiSimone further observed that defendant’s merit release date of July 28, 2004 had passed without defendant having been granted release *590 (see defendant’s A-II affirmation, exhibit C), and that inmates denied merit release cannot be considered for the award a second time.
3. Continued Hearing and Supplemental Submissions on A-II Resentencing Eligibility
At the continuation of the hearing on December 7, 2005, the court informed the parties of the advice it had received from DOCS’ Associate Counsel. Acknowledging that the position of DOCS as to defendant’s receipt of merit time was not dispositive of the court’s determination on defendant’s eligibility for A-II resentencing, the court nonetheless raised, sua sponte, the issue of whether defendant’s history of disciplinary infractions while incarcerated would affect his eligibility for resentencing on the A-II counts. Upon learning of the position being taken by DOCS, the People reversed their previously stated position in support of defendant’s eligibility for A-II resentencing and, for the first time, argued that the withholding by DOCS of a merit time award to defendant rendered him ineligible for A-II resentencing under the final statutory eligibility criterion of DLRA-2 § 1 and Correction Law § 803 (1) (d) (iv).
The defense disputed DiSimone’s position, as well as its relevance, contending that the withholding of the award by DOCS under the regulation did not affect defendant’s statutory eligibility to apply for the award under Correction Law § 803 (1) (d). The parties were given the opportunity to address the issue in supplemental written submissions, which were received on December 12. (Letter of Elliot Felig, Esq., dated Dec. 12, 2005 [People’s letter]; letter of Barbara Zolot, Esq., dated Dec. 12, 2005 [defendant’s letter].)
In their supplemental submission, the People contended that the DLRA-2 resentencing eligibility criteria expressly incorporate a requirement that the inmate satisfy all conditions set forth in the eligibility standards of Correction Law § 803 (1) (d), including, specifically, the terms set forth in its subdivision (1) (d) (iv). They argued that because it is uncontested that defendant has accrued 118 days of SHU and keeplock time over the entire course of his incarceration, the provisions of the DLRA-2, Correction Law § 803 (1) (d) and 7 NYCRR 280.2 render him ineligible for A-II resentencing. They cited in support various Appellate Division decisions upholding against CPLR article 78 challenges discretionary decisions by DOCS to withhold awards of merit time based upon DOCS’ interpretation of the regulation as involving an inmate’s cumulative disciplinary history *591 while incarcerated. They further claimed that interpretation given by DOCS to the regulation is binding on this court, and compels a finding that defendant is ineligible for A-II resentencing. Although the People initially urged that defendant be resentenced to the maximum determinate term of 20 years’ incarceration for his class A-I conviction, and to concurrent determinate terms of 10 years for each of his class A-II convictions, in their December 12 letter, they contended that defendant is not eligible for resentencing on the A-II counts.
In their own supplemental submission, the defense argued that under both the DLRA-2 and Correction Law § 803 (1) (d), defendant Quinones is “eligible” to earn merit time, and thus qualifies for resentencing under the DLRA-2. The defense asserted that pursuant to Correction Law § 803 (1) (d) (i), all inmates, except those statutorily defined as ineligible under subdivision (1) (d) (ii) for having committed violent crimes (a category to which defendant does not belong), are eligible to receive merit time. Defendant maintained that subdivision (1) (d) (iv) of section 803, providing that merit time “shall be withheld for any serious disciplinary infraction,” refers not to the statutory eligibility of an inmate to earn merit time, but to the discretionary power of DOCS to grant or withhold such an award from an eligible inmate. The defense further contended that the ameliorative purpose of the DLRA-2, as expressed in its legislative history, supports its position. Defendant insisted that the position taken by DOCS on the issue of the granting or withholding of a merit time award to defendant is not only not binding on this court, but is also irrelevant to its determination on the issue of defendant’s eligibility for resentencing under the DLRA-2. Finally, defendant claimed that even under the People’s interpretation of the DLRA-2 eligibility requirements, defendant has not committed any “serious disciplinary infraction,” as he has never received 60 or more days of SHU or keeplock time for a single disciplinary infraction.
IV Findings and Conclusions
In accordance with section 23 of the DLRA and section 1 of the DLRA-2, this court has considered both of the resentencing motions submitted by the defense, along with their accompanying exhibits; the People’s affirmation in response to both motions; the defendant’s reply affirmation; the parties supplemental letter submissions; DOCS institutional records of defendant’s confinement (including defendant’s inmate training achievement and potential employability report, his inmate progress *592 reports, his certificate of achievement in the Spanish ABE I and II curriculum, his inmate disciplinary history, and three inmate misbehavior reports); DOCS’ merit eligible list; defendant’s character reference from Ms. Gloria Ramos, a long-time friend; and copies of letters to defendant from his preteenage children, Monica and Raymond.
A. Defendant’s Eligibility for Resentencings
This court must first address the threshold issue of defendant Quinones’ eligibility for resentencing.
1. DLRA
Examining the uncontroverted evidence, this court finds that the defendant has been convicted of a class A-I felony and is currently serving a sentence of 17 years to life for that conviction. Based on these findings, this court holds that defendant is eligible for resentencing under section 23 of the DLRA on his A-I drug conviction.
2. DLRA-2
It is clear that defendant stands convicted of two class A-II felonies involving the sale of illegal drugs; that he is currently serving an indeterminate sentence with a minimum of not less than three years on each of those convictions; and that defendant is more than 12 months from being an eligible inmate as that term is defined in Correction Law § 851 (2) regarding temporary release programs. With respect to the final requirement of the DLRA-2, that an inmate meet the eligibility standards necessary to receive merit time under the Correction Law (Correction Law § 803 [1] Ed]), closer examination of the applicable statutory and regulatory framework is required.
Section 1 of the DLRA-2 states:
“Notwithstanding any contrary provision of law, any person in the custody of the department of correctional services convicted of a class A-II felony offense defined in article 220 of the penal law which was committed prior to the effective date of this section, and who was sentenced thereon to an indeterminate term of imprisonment with a minimum period not less than three years pursuant to provisions of the law in effect prior to the effective date of this section, and who is more than twelve months from being an eligible inmate as that term is defined in subdivision 2 of section 851 of the correction law, and who meets the eligibility requirements of paragraph (d) of subdivision (1) of section 803 of the cor *593 rection law may, upon notice to the appropriate district attorney, apply to be resentenced in accordance with section 70.71 of the penal law in the court which imposed the original sentence.” (L 2005, ch 643, § 1 [emphasis added].)
Both sides agree that defendant’s eligibility for resentencing on his A-II drug convictions will be determined by this court’s interpretation of the requirement of the DLRA-2, underscored above, that defendant must meet “the eligibility requirements of paragraph (d) of subdivision (1) of section 803 of the [Correction [L]aw,” relating to merit time allowances. That section of the Correction Law states, in its entirety:
“(d) (i) Except as provided in subparagraph (ii) of this paragraph, every person under the custody of the department or confined in a facility in the department of mental hygiene serving an indeterminate sentence of imprisonment with a minimum period of one year or more or a determinate sentence of imprisonment of one year or more imposed pursuant to section 70.70 or 70.71 of the penal law, may earn a merit time allowance.
“(ii) Such merit time allowance shall not be available to any person serving an indeterminate sentence authorized for an A-I felony offense, other than an A-I felony offense defined in article two hundred twenty of the penal law, or any sentence imposed for a violent felony offense as defined in section 70.02 of the penal law, manslaughter in the second degree, vehicular manslaughter in the second degree, vehicular manslaughter in the first degree, criminally negligent homicide, an offense defined in article one hundred thirty of the penal law, incest, or an offense defined in article two hundred sixty-three of the penal law, or aggravated harassment of an employee by an inmate.
“(iii) The merit time allowance credit against the minimum period of the indeterminate sentence shall be one-sixth of the minimum period imposed by the court except that such credit shall be one-third of the minimum period imposed by the court for an A-I felony offense defined in article two hundred twenty of the penal law. In the case of such a determinate sentence, in addition to the time allowance credit authorized by paragraph (c) of this subdivision, the merit time allowance credited *594 against the term of the determinate sentence pursuant to this paragraph shall be one-seventh of the term imposed by the court.
“(iv) Such merit time allowance may be granted when an inmate successfully participates in the work and treatment program assigned pursuant to section eight hundred five of this article and when such inmate obtains a general equivalency diploma, an alcohol and substance abuse treatment certificate, a vocational trade certificate following at least six months of vocational programming or performs at least four hundred hours of service as part of a community work crew.
“Such allowance shall be withheld for any serious disciplinary infraction or upon a judicial determination that the person, while an inmate, commenced or continued a civil action, proceeding or claim that was found to be frivolous as defined in subdivision (c) of section eight thousand three hundred three-a of the civil practice law and rules, or an order of a federal court pursuant to rule 11 of the federal rules of civil procedure imposing sanctions in an action commenced by a person, while an inmate, against a state agency, officer or employee.
“(v) The provisions of this paragraph shall apply to persons in custody serving an indeterminate sentence on the effective date of this paragraph as well as to persons sentenced to an indeterminate sentence on and after the effective date of this paragraph and prior to September first, two thousand five and to persons sentenced to a determinate sentence prior to September first, two thousand eleven for a felony as defined in article two hundred twenty or two hundred twenty-one of the penal law.” (Correction Law § 803 [1] [d].)
Thus, this court must decide whether the reference in the DLRA-2 to “the eligibility requirements of. . . [Correction Law § 803 (1) (d)]” includes all of the subparagraphs of the latter statute, or merely subparagraphs (i) and (ii), as argued by defendant. The question arising in this case, namely, whether an inmate who satisfies the criteria of Correction Law § 803 (1) (d) (i) and (ii), but whose merit time has been withheld pursuant to section 803 (1) (d) (iv), is nevertheless eligible for A-II resentencing under the DLRA-2, appears not to have been addressed in any reported decision to date.
*595 The nub of the controversy is the differing interpretations the parties place on the term “eligibility requirements” for merit time as that term is used in section 1 of the DLRA-2. On this point, the statute is not clear on its face (compare DLRA § 41 [d-1] [clearly making that statute’s sentencing scheme exclusively prospective in its application, and requiring no resort to other means of statutory construction]; see also, People v Nelson, 21 AD3d 861 [1st Dept 2005] [so holding]; People v Singletary, 7 Misc 3d 1004[A], 2005 NY Slip Op 50441[U] [Sup Ct, NY County 2005] [so holding]). Therefore, this court must construe this phrase using traditional, reliable methods of statutory interpretation to illuminate the intention of its legislative drafters.
Generally, legislative intent is to be determined from the words and language used, and the law in question must be construed according to its most natural sense. (McKinney’s Cons Laws of NY, Book 1, Statutes § 94.) Here, section 803 (1) (d) states the following about eligibility for merit time: “Except as provided in subparagraph (ii) of this paragraph, every person under the custody of the department . . . may earn a merit time allowance.” (Correction Law § 803 [1] [d] [i].) Subparagraph (ii) provides: “Such merit time allowance shall not be available to any person . . . [serving a sentence for certain specified offenses].” (Correction Law § 803 [1] [d] [ii].) A fair reading of the statute according to its terms, and the most natural one, is that its provisions defining eligibility to earn merit time are stated entirely in those two subparagraphs: “Except as provided in subparagraph (ii) . . . [e]very person . . . may earn” the allowance (Correction Law § 803 [1] [d] [i]).
Furthermore, examining the words and language used by the Legislature, the provisions of subparagraph (iv), that “[s]uch merit time allowance may be granted when an inmate successfully participates in [a specified] work and treatment program . . . and obtains [a described educational or vocational certificate] or performs at least four hundred hours of service as part of a community work crew” (Correction Law § 803 [1] [d] [iv] [emphasis added]), and its further directive that “[s]uch allowance shall be withheld for any serious disciplinary infraction or upon a judicial determination that the person, while an inmate, commenced . . . [civil litigation] that was found to be frivolous” (id. [emphasis added]), naturally suggest the circumstances under which the Department may grant, or must withhold, the award of merit time to an inmate who is, pursuant to subpara *596 graphs (i) and (ii), statutorily eligible to receive it. Furthermore, the use of the permissive word “may” in the first sentence of subparagraph (iv) is inconsistent with the establishment of an eligibility requirement.
That this fair and natural reading of these provisions is correct is clear to this court for several reasons. First, such an interpretation of the statutory scheme makes sense. The language of Correction Law § 803 (1) (d) in subparagraph (i) declares that “every” inmate who will be serving a sentence with a minimum of one year is eligible to earn merit time, except for those inmates specifically excluded for having committed one of the offenses listed in subparagraph (ii). Subparagraph (iii) discusses how merit time and good time allowance credit will be used to offset the inmate’s period of incarceration. Subparagraph (iv) explains how merit time can be granted or withheld from eligible inmates by the Department.[11] It is clear that the Department is authorized to be the final arbiter of merit awards, and that not every eligible inmate will receive merit time. Subdivision (4) of Correction Law § 803 states:
“No person shall have the right to demand or require the allowances authorized by this section. The decision of the commissioner of correctional services as to the granting, withholding, forfeiture, cancellation or restoration of such allowances shall be final and shall not be reviewable if made in accordance with law.” (Correction Law § 803 [4]; see Matter of Scarola v Goord, 266 AD2d 598 [3d Dept 1999], lv denied 94 NY2d 760 [2000] [finding receipt of merit time a privilege, not a right].)
Section 803 (4) thus vests discretion in the Commissioner of DOCS to grant, withhold, forfeit, cancel or restore the merit time allocations for which inmates are eligible under section 803 (1) (d), and makes clear that notwithstanding an inmate’s eligibility for the award, there is no automatic entitlement to its receipt. The provisions of subdivision (4) thus further illuminate the purpose and meaning of section 803 (1) (d) (iv), demonstrating that the function of the latter provision is to guide the Commissioner in his or her exercise of discretion, rather than to establish further statutory eligibility criteria for the program. Such a reading harmonizes the various provisions of section 803 into a logical and consistent legislative scheme.
*597 Secondly, the Practice Commentary to Correction Law § 803 (1) (d) speaks in the same terms and uses the same constructs in explaining the operation of the merit time program under that section:
“Not all inmates are eligible for merit time. An inmate must be serving an indeterminate sentence of imprisonment in excess of one year and cannot also be serving a determinate sentence of imprisonment. The ‘in excess of one year’ minimum inexplicably excludes from eligibility inmates who receive one year minimum terms, terms that are generally imposed for the least serious felony offenses. This is most likely a drafting oversight that can be easily rectified. In addition, inmates convicted of A-I felonies; violent felonies, as defined in § 70.02 of the Penal Law; and certain other serious felonies and sex offenses as listed in the statute are ineligible to earn merit time.
“Assuming an inmate is eligible, he may be granted merit time if he successfully participates in his assigned work or treatment program, AND either obtains a GED, alcohol and substance abuse treatment certificate, or vocational trade certificate following at least six months of vocational programming, OR performs at least 400 hours of service on a community work crew.
“The statute further provides that merit shall be withheld if the inmate is found guilty of any ‘serious’ disciplinary infraction. The statute does not define ‘serious,’ but this would presumably refer to Tier II and III disciplinary infractions. See 7 NYCRR Part 270 (Standards of Inmate Behavior — Behavior Prohibited in all Facilities and Classification of Each Infraction).
“In addition, the statute attempts to discourage pro se inmate litigants from commencing frivolous or improper litigation. An inmate’s merit time shall be withheld if a state court determines that the inmate commenced or continued a ‘frivolous’ lawsuit, as defined in subdivision (c) of § 8303-a of the Civil Practice Law and Rules, OR a federal court imposes sanctions in an action by the inmate against a state agency, officer, or employee pursuant to Rule 11 (c) of the Federal Rules of Civil Procedure.” (Bonacquist, Practice Commentaries, McKinney’s Cons *598 Laws of NY, Book 10B, Correction Law § 803, at 302 [emphasis added].)
The commentator speaks clearly in the first paragraph of the eligibility factors for receipt of merit time as being the particular crime(s) of conviction and length of sentence(s) only. In the succeeding three paragraphs, he then proceeds to discuss the circumstances under which merit time may be granted or withheld from an eligible inmate (“Assuming an inmate is eligible, he may be granted merit time” [i<i.]). Accordingly, this court’s construction of the language in the DLRA-2 pertaining to “the eligibility requirements” of Correction Law § 803 (1) (d) is fully congruent with that of the Practice Commentator.
More telling for present purposes, of course, is the legislative history of the DLRA-2. There the drafters from both houses clearly explained that in incorporating the “eligibility requirements” of section 803 (1) (d) into the criteria for entitlement to resentencing under the 2005 law, they meant only to reference the first two subparagraphs of that section, notwithstanding any contrary construction of the provision utilized by the Department.
The Assembly sponsor of the bill explained the final requirement for A-II resentencing as follows:
“Certain offenders convicted of class A-II felony offenses defined in article 220 of the penal law would be eligible to apply to their sentencing courts for a conversion of the indeterminate sentence to a new determinate sentence consistent with section 70.71 of the penal law if they are: . . .
“(c) otherwise not disqualified pursuant to Correction Law section 803, subdivision 1 paragraphs (i) and (ii) (they have committed some disqualifying violent felony or other enumerated felony offense, although need not have completed the work and treatment or other requirements in paragraph [iii] [sic] of that section).” (Introducer’s Mem in Support of 2005 Assembly Bill A8980, codified as L 2005, ch 643 [emphasis added].)
This language clearly demonstrates the Assembly drafters’ intent that A-II offenders would meet their resentencing eligibility requirements by satisfying the criteria of paragraphs (i) and (ii), that is, by not having been convicted of the violent or other felonies specified in paragraph (ii). The memorandum then expressly states that the inmate need not have done the work, *599 treatment or other requirements of the balance of the subdivision[12] (which would include not having committed any “serious disciplinary infraction”) in order to qualify for resentencing.[13]
Similarly, when the counterpart antecedent of the DLRA-2 was introduced in the Senate, its sponsor explained:
“The law is intended to apply to those class A-II felony controlled substance offenders who are eligible to earn merit time, but is not intended to require that they have earned the merit time allowance before they may apply for resentencing pursuant to the provisions of this bill. Thus, anyone who is statutorily eligible to earn merit time and who is more than 12 months from being eligible pursuant to statutory eligibility criteria for temporary release may apply for resentencing of their class A-II felony controlled substance offense.” (Senate Mem in Support, Bill Jacket, L 2005, ch 643, 2005 McKinney’s Session Law News of NY, at A-968 [emphasis added].)
This explanation similarly reflects the Senate drafters’ clear intention to grant resentencing eligibility to all otherwise qualified inmates meeting the statutory eligibility requirements for merit time (as set forth in paragraphs [i] and [ii]), without regard to their success in actually earning the award (by satisfying the terms of paragraph [iv]). To conclude otherwise would render the drafter’s statement meaningless: the language about having “earned” the allowance would have no context, if not referencing paragraph (iv), and would place the Senate bill in conflict with the Assembly’s stated intention.
Finally, as noted, the underlying purpose of both the DLRA and DLRA-2 was to ameliorate the harsh sentences required to be imposed under the former sentencing statute (Penal Law § 70.00) and to replace them with more enlightened approaches to the problems created by the distribution and use of controlled *600 substances in our society.[14] Generally, remedial legislation is to be liberally construed to carry out the reforms contemplated by the Legislature. (Statutes § 321.) In defendant’s situation, a contrary construction would upend the Legislature’s sentencing reform scheme: defendant’s inability to earn merit time would negate the benefit of his A-I resentencing to a determinate term, as his indeterminate life sentences on the A-II charges would forever remain a potential bar to his release. This court’s more liberal construction of the DLRA-2 eligibility requirement, on the other hand, effects the ameliorative legislative plan by affording the defendant release on his less serious A-II convictions as when he is placed on postrelease supervision on his A-I conviction. This construction thereby avoids an incongruity which would undermine the spirit of these ameliorative statutes.[15]
The People’s arguments, based on the Department’s interpretation of the regulations implementing section 803 (1) (d), are not persuasive on the issue of the intention of the drafters of the DLRA-2. The People note, correctly, that the portion of the merit time law at issue here, the reference in paragraph (iv) to the term “serious disciplinary infraction,” is not expressly defined in Correction Law § 803 (1) (d), but is defined by the Commissioner in the regulation. Subdivision (b) (3) of 7 NYCRR 280.2 states:
“An inmate must satisfy all criteria set forth in subdivisions (a) through (d) [of this section] to be eligible for merit time consideration . . .
“(b) Disciplinary record criteria. An inmate must not commit any serious disciplinary infraction. A ‘serious disciplinary infraction’ shall be identified as behavior which results in criminal or disciplinary sanctions as follows: . . .
“(3) receipt of disciplinary sanctions under Parts *601 253 or 254 of this Title1[16] which total 60 or more days of SHU and/or keeplock time.”
As the People further correctly observe, this regulation has been cited as a ground for upholding a discretionary denial of merit time by DOCS to an inmate whose disciplinary record indicated more than 60 days of keeplock time. (See, e.g., Matter of La Rocco v Goord, supra [article 78 challenge rejected, citing 7 NYCRR 280.2 (b) (3)].) The instant matter requires this court to apply and, if necessary, interpret the statutory eligibility requirements of the DLRA-2. Thus, decisions upholding the exercise of discretion by the Commissioner of DOCS under Correction Law § 803 (1) (d) and denying mandamus relief to inmates petitioning under that statute shed little light on the issue of statutory eligibility to seek A-II drug felony resentencing under the DLRA-2.
The People’s remaining argument is also inapposite. They maintain that the interpretation of section 803 (1) (d) by DOCS should control this court’s construction of that law, and, correspondingly, of the DLRA-2. They note that since the commencement of his incarceration in state prison in 1994, defendant has received disciplinary sanctions which cumulatively total in excess of 60 days of SHU and/or keeplock time specifically, 118 days of SHU or keeplock disciplinary time cumulatively (defendant’s A-I affidavit, exhibit E). Thus, DOCS, invoking the regulation, has concluded that defendant has a disqualifying “serious disciplinary infraction” and has determined that any merit time for which he is eligible will be withheld.[17] The People rely on the well-settled principle that “the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld.” (Matter of Howard v Wyman, 28 NY2d 434, 438 [1971]; see Matter of Chesterfield Assoc. v New York State Dept. of Labor, 4 NY3d 597 [2005].) That principle further dictates that “ ‘where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court’s *602 function is limited.’ ” (Matter of Howard v Wyman, 28 NY2d at 438, citing NLRB v Hearst Publications, Inc., 322 US 111 [1944].)
This principle has no application here, however, where the court is not called upon to review the action of the Department. The issue before this court is the construction of the DLRA-2. As to that determination, the Department of Correctional Services bears no administrative or legal responsibility and, accordingly, is due no particular deference. The role of statutory construction falls entirely to the court.
Accordingly, for all of these reasons, this court holds that defendant meets the eligibility requirements of Correction Law § 803 (1) (d) and qualifies for resentencing under section 1 of the DLRA-2 on his A-II drug convictions.
B. Factors Bearing upon Defendant’s Resentence
As the People concede that substantial justice does not require denial of defendant’s applications for resentencing (DLRA § 23; DLRA-2 § 1), the court will consider the appropriate terms of defendant’s resentence within the range of sentences authorized by Penal Law § 70.71.
The following facts are unchallenged in these proceedings. This case represents defendant’s first felony conviction. His criminal history includes only one prior conviction, for misdemeanor drug possession. In this case, defendant Quinones orchestrated the sale of more than 6V2 ounces of cocaine to an undercover police officer in four separate transactions over a two-month period. He has sustained seven disciplinary infractions, including four tier III violations, some of which resulted in confinement in special housing units or keeplock.
On the other hand, defendant has committed no significant disciplinary infractions during the past 17 months. The instant case represents defendant’s first felony conviction. He is now 55 years old and has been incarcerated for more than 12 years. Defendant’s inmate progress reports, some of which have been furnished to the court (defendant’s A-I affidavit, exhibit C), and which reflect his work history in the correctional facility’s cabinetmaking and millwork program, show that defendant has developed vocational skills and has always received above average or average reviews in his work performance. Defense counsel has represented, and the People do not dispute, that defendant is currently participating in a GED class and has earned a certificate of achievement for his Spanish I and II curricula. Finally, *603 defendant, while incarcerated, has provided for the well-being of his two minor children. They enthusiastically maintain contact with him, and he with them, and they appear to desire his expeditious return home. (Defendant’s A-I affidavit, exhibit G.) He has also provided a character reference. (Defendant’s A-I affidavit at 8,1122.)
Defendant was also convicted by a plea of guilty of having sold an illegal assault weapon, together with ammunition, to the undercover officer. The fact that the original sentencing judge chose not to consider defendant’s pending indictment for the sale of firearms does not preclude this court from “considering] any facts or circumstances relevant to the imposition of a new sentence which are submitted by such person or the people” (DLRA § 23; DLRA-2 § 1). This court now has before it information not available to the original sentencing judge, namely, the fact of defendant’s conviction in that case.
Moreover as specifically authorized by these statutes, acting to fulfill its traditional sentencing function (see United States v Booker, 543 US 220 [2005]; Williams v New York, 337 US 241 [1949]; People v Naranjo, supra), this court may consider the fact of defendant’s prior criminal or antisocial acts in determining his new sentence. (North Carolina v Pearce, 395 US 711 [1969]; Williams v New York, supra.) The sole requirement is that the information be “reliable and accurate,” and not “materially untrue.” (People v Naranjo, supra at 1049; People v Outley, 80 NY2d 702, 712 [1993]; see Townsend v Burke, 334 US 736 [1948].) The fact of defendant’s conviction for the sale of the assault weapon is both reliable and accurate, and has been admitted by defendant.
By contrast, this court has not relied on the challenged evidence from Henderson and the unknown source mentioned during the Sandoval hearing in arriving at its sentence. While this court is not prohibited from considering reliable hearsay reports by the acts, and is permitted to do so by the Criminal Procedure Law (see CPL 400.10), and by relevant case law (see e.g., Williams v New York, supra), this court finds the proffered information here insufficiently reliable to be considered on defendant’s resentencing.
Henderson’s information lacks sufficient reliability to be considered by the court for several reasons. Henderson was the sole source of this information, which is entirely uncorroborated. She is now deceased, and her accusations cannot be tested. Although the People claim to have found her a reliable *604 source of information, they obtained her cooperation only after offering her a reduced sentence in exchange for her testimony. Significantly, the People, having at one point been possessed of both the evidence and the witness, never sought to charge defendant with the alleged offenses. Finally, as Henderson had alleged that defendant had assaulted her, her accusations against him may have been tainted by her own hostility toward him. Thus, this court cannot assure itself of the reliability and accuracy of the evidence ascribed to this witness, and therefore chooses not to consider it in sentencing defendant. (People v Outley, supra at 712; People v Naranjo, supra at 1049.)
The information from the unidentified source also lacks sufficient reliability to be considered here, as it, too, is single-source information from an unavailable witness, is uncorroborated and untested, and has never formed the basis of any charge against defendant.
V The Proposed Sentence
Both sides agree that substantial justice does not dictate that defendant’s motion for resentencing be denied. Nevertheless, defendant’s record of a pattern of drug sales for significant sums of money and his ready access to automatic firearms constitute, in the words of the original sentencing judge, “planned, ongoing criminal activity” (defendant’s A-I affidavit at 4, 1i 8) evincing a serious disregard for public safety. A sentence according him immediate release is therefore not appropriate in his case. Additionally, defendant’s record of disciplinary infractions, while not egregious, compels caution in considering his prognosis for peaceful, lawful expression of his emotions in the future.
Accordingly, upon these findings, and in accordance with the requirements of section 23 of the DLRA and section 1 of the DLRA-2, this court hereby notifies defendant of its intention to resentence him on his class A-I conviction of criminal sale of a controlled substance in the first degree, to a determinate term of 17 years’ imprisonment, and on each of his class A-II convictions of criminal sale of a controlled substance in the second degree, to a determinate term of six years’ imprisonment. In each instance, the period of incarceration is to be followed by five years of postrelease supervision, in accordance with Penal Law § 70.71. The remaining sentence previously imposed in the case will be undisturbed by these resentencing orders, and all sentences shall run concurrently. Time already served by defendant will be credited toward fulfillment of the new determinate sentences.
*605 Unless defendant, Ramon Quinones, withdraws this application or appeals from this order, this court will enter a final order vacating the original sentence imposed and resentence defendant to the terms specified immediately above.
VI. Conclusion
For all of these reasons, defendant’s motions for resentencing based on section 23 of the DLRA and section 1 of the DLRA-2 are granted. The defendant is hereby notified of the court’s intention to resentence defendant as set forth above.

. The case was tried before another justice of this court who has since retired. The instant motions have been randomly assigned to this court for disposition. (See L 2004, ch 738, § 23; L 2005, ch 643, § 1.)

. L 2004, ch 738, §§ 1-41.

. L 2005, ch 643, § 1.

. The court file in this case cannot be located.

. These were the only charges submitted to the jury.

. Section 23 and section 1 also provide that a defendant may, as a matter of right, in accordance with the applicable provisions of the Criminal Procedure Law appeal from the following orders: (1) an order denying resentencing, (2) an order imposing a new sentence under this section on the ground that it is either (i) harsh or excessive, or (ii) that the new term is unauthorized as a matter of law. (Id.) A defendant also may, as a matter of right, appeal from a proposed sentence order on the ground that the proposed sentence is harsh or excessive. (Id.)

. The effective date of the DLRA-2 is Oct. 29, 2005. This court agreed to permit defendant to move for resentencing under that provision prior to its effective date.

. See 7 NYCRR part 270 (standards of inmate behavior — behavior prohibited in all facilities and the classification of each infraction).

. These sanctions involve confinement in solitary or segregated housing removed from the general population, as well as other restrictions on the inmate’s privileges within the institution. (See 7 NYCRR parts 300-301; 254.7 [a] [1] [iii].)

. See 7 NYCRR 253.7 (a) (1) (iii), and n 9, supra.

. Subparagraph (v) establishes the effective dates of the law, and is not relevant to this discussion.

. Although the memorandum references paragraph (iii), its obvious intended reference was to the portion of the section dealing with the work, treatment and other requirements, namely, paragraph (iv).

. As is clear from the cases cited by the People, the position of DOCS on the issue has been a matter of public record for some time. (People’s letter, at 3; see, e.g., Matter of La Rocco v Goord, 15 AD3d 809, [3d Dept 2005]; Matter of Scarola v Goord, supra.) It may therefore be assumed that the Legislature was aware of, but chose not to adopt, that position in the DLRA-2.

. See People v Singletary, 7 Misc 3d 1004(A), 2005 NY Slip Op 50441(U) (Sup Ct, NY County 2005 [citing pertinent documents comprising the legislative history of the DLRA]).

. An inmate’s “serious disciplinary infraction” may still be considered by the resentencing court, however. In the exercise of its discretion under the acts, the court may rely upon such conduct in determining that “substantial justice dictates that the application should be denied.” (DLRA § 23; DLRA-2 § 1.) This approach would permit consistent sentencing results in cases like this one, where the offender is charged with both class A-I and class A-II drug felonies.

. Part 253 relates to disciplinary (tier II) hearings, while Part 254 addresses superintendent’s (tier III) hearings.

. As noted, the defendant challenges this construction of the “serious disciplinary infraction” language of section 803 (1) (d) (iv), arguing that the intent of the statute was to withhold the award in cases in which a single infraction entailed 60 or more days of SHU or keeplock time. Given this court’s statutory construction determination, it is unnecessary to resolve this issue in these proceedings.