OPINION OF THE COURT
Marcy L. Kahn, J.
Defendants in the three above-captioned cases were each convicted in separate prosecutions of class B drug felonies and received indeterminate terms of imprisonment in accordance with the laws in effect prior to January 13, 2005. They now move for resentencing pursuant to the Drug ¡Law Reform Act of 2009 (DLRA-3) (L 2009, ch 56, part AAA, § 9 [codified at CPL 440.46]). While conceding that each defendant satisfies the general statutory eligibility criteria of Criminal Procedure Law § 440.46 (1), the People have nonetheless opposed the applications in each case, arguing that the defendant is ineligible for resentencing under the “look-back” provision of CPL 440.46 (5) (a), barring relief for defendants with previous convictions “within the preceding ten years” of “exclusion offenses.” (Id.) Because each of these cases requires this court to resolve the *640 identical issue of the proper interpretation of the “look-back” provision of CPL 440.46 (5) (a), this court has consolidated the three cases for purpose of determining this issue only.[1]
I. Issue Presented
For present purposes, the critical language of the newly enacted statute regarding eligibility for resentencing of persons convicted under the former law of class B drug felony offenses states:
“1. Any person in the custody of the department of correctional services convicted of a class B felony offense defined in article two hundred twenty of the penal law which was committed prior to January thirteenth, two thousand five, who is serving an indeterminate sentence with a maximum term of more than three years, may, except as provided in subdivision five of this section, upon notice to the appropriate district attorney, apply to be resentenced to a determinate sentence in accordance with sections 60.04 and 70.70 of the penal law in the court which imposed the sentence. . . .
“5. The provisions of this section shall not apply to any person who is serving a sentence on a conviction for or has a predicate felony conviction for an exclusion offense. For purposes of this subdivision, an ‘exclusion offense’ is:
“(a) a crime for which the person was previously convicted within the preceding ten years, excluding any time during which the offender was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony, which was: (i) a violent felony offense as defined in section 70.02 of the penal law . . . .” (CPL 440.46 [1], [5] [a].)
Thus, as relevant here, CPL 440.46 (5) (a) provides that in order to be eligible for DLRA-3 resentencing, the defendant must not have had a “predicate felony conviction” within “the preceding ten years” for an “exclusion offense.”
In each of these cases, the defendant had incurred a conviction for a violent felony offense prior to his conviction for the *641 instant class B drug felony. The parties in each case take opposing views on whether the prior violent felony conviction is an “exclusion offense,” differing on the construction which the court should place on the look-back language of CPL 440.46 (5) (a) to determine whether the defendant in question was previously convicted of his violent felony offense “within the preceding ten years.”
The defendants each maintain that the look-back period is 10 years preceding the date of filing of the resentencing application, excluding any time during which the defendant was incarcerated for any reason between the date of the commission of the previous violent felony and the date of commission of the present felony. The People’s view is that the look-back period comprises the 10 years preceding the date of commission of the instant drug felony, similarly excluding any incarceration time between the commission of the previous potential exclusion offense and the commission of the instant offense.
II. Legal Analysis
In interpreting a statute, “[t]he starting point is always to look to the language itself and where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning.” (Fultz v Economakis, 10 NY3d 542, 547 [2008] [internal quotation marks and citations omitted].) Only where the language of a statute “leaves its purpose and intent uncertain” should a court attempt to construe the enactment. (McKinney’s Cons Laws of NY, Book 1, Statutes § 76, Comment.)
In this case, the language of the look-back provision is susceptible of multiple interpretations. For example, the “preceding ten years” could be measured from the date of filing of the resentencing application, as the defendants maintain, from the date of the commission of the present felony, as both of the prosecutors’ offices[2] argue, or from the effective date of the statute, October 7, 2009. Further, due to the recency of the enactment, there is as yet no controlling appellate decisional law which resolves the debate.[3] Therefore, this court will employ established principles of statutory construction to determine the meaning of the subject language.
*642 A. Natural Meaning
The principles governing statutory construction provide that under such circumstances, statutory language should be interpreted according to its natural meaning (Statutes § 94, Comment [“The language of a statute is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction”]). In this instance, the natural and obvious meaning of “within the preceding ten years” is the 10-year period immediately preceding the date of filing of the resentencing application. There are additional reasons for employing this construction which emerge from application of other principles of statutory interpretation, however.
B. Legislative History
“The primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature.” (Statutes § 92 [a].) While a court should ordinarily look to the legislative history of an ambiguous statute to discern the drafters’ intent (see Statutes §§ 124, 125), in this case, the statute was enacted virtually without any such revelatory historical record. (See People v Brown at *4 [observing the Bill Jacket for the DLRA-3 to contain only the bill itself, due to its enactment as part of budget bill, and to lack the typical submissions from interested advocacy groups, government agencies and legislators].) Such comments as were made on the bill, moreover, did not address the meaning of the look-back provision for exclusion offenses in resentencing. (See People v Gilberto Sosa, indictment No. 7375/02, reply letter of Carol A. Zeldin, Esq., dated Jan. 7, 2009, supporting drug law resentencing, exhibit A [Assembly Debate transcripts, L 2009, ch 56 (Mar. 31, 2009)]; Bill Jacket, L 2009, ch 56.) Thus, the legislative history offers no insight as to the Legislature’s intention.
C. Context of CPL 440.46 within the DLRA Legislation
A central construct in the interpretation of an ambiguous statute is consideration of “the general spirit and purpose underlying its enactment.” (Statutes § 96.) In this case, the DLRA-3 was enacted as the third in a series of statutory reforms by the New York State Legislature to alleviate some of the more *643 draconian aspects of the Rockefeller Drug Laws first promulgated in 1974. The first of those acts, the Drug Law Reform Act of 2004 (DLRA) (L 2004, ch 738, §§ 1-41), permitted those convicted of class A-I drug felonies to apply for elimination of the life sentences to which they had been subjected and to be resentenced to determinate sentences. The enactment the following year of the Drug Law Reform Act of 2005 (DLRA-2) (L 2005, ch 643, § 1) was a further effort by the Legislature to extend the new ameliorative policies to defendants serving life sentences for conviction of class A-II felony drug offenses. Similar to the DLRA and the DLRA-2, the DLRA-3 comprises a complex scheme of significant revisions to the Penal Law, Criminal Procedure Law, Correction Law and Executive Law relating to felony-level drug offenders. The statutory changes effected by the DLRA, the DLRA-2 and the DLRA-3 were specifically designed to ameliorate the harsh sentences previously mandated for nonviolent drug offenders convicted of drug felonies.
The DLRA-3 includes numerous such ameliorative provisions, in addition to the resentencing provisions of CPL 440.46 noted above permitting convicted class B drug felons to seek resentencing to shorter determinate terms of incarceration if they meet certain eligibility criteria. For example, it amends the Criminal Procedure Law to add a new article 216 providing for judicial diversion of eligible defendants into substance abuse treatment programs without requiring the consent of prosecutors. This new article changes existing law to permit judges to refer persons convicted of class B drug felonies to drug or alcohol treatment in lieu of incarceratory sentences, even if they have a prior nonviolent felony conviction on their record.
The DLRA-3 also amends the Penal Law to provide for new authorized dispositions of certain drug felony cases. For example, one such amendment provides that first felony offenders convicted of class B drug felonies are now eligible to seek nonincarceratory sentences. (Penal Law § 60.04 [3].) Pursuant to another added provision, shock incarceration is much more widely available to any person convicted under current or prior law of a drug felony, with certain exceptions based upon the individual’s criminal history.[4] (Penal Law § 60.04 [7].) Another amendment provides that class B drug felons who have prior *644 nonviolent felony convictions may receive a definite sentence of one year or less. (Penal Law § 70.70 [2] [c].) A further amendment allows determinate terms which are imposed for class B, C, D and E drug offenders, including second drug felony offenders whose prior felonies are nonviolent, to be served as sentences of parole supervision under CPL 410.91 (the Willard program).[5] (Penal Law § 70.70 [2] [d].) Still another amendment permits courts to impose probation sentences on class C, D and E second drug felony offenders. (Penal Law § 70.70 [3] [c].)
This review demonstrates that this legislation was designed to authorize a more lenient, and more therapeutic, judicial response to all but the most serious drug crimes. (Cf. Penal Law § 220.48 [criminal sale of a controlled substance to a child, a class B felony enacted in the DLRA-3]; Penal Law § 220.77 [operating as a major trafficker, a class A-I felony enacted in the DLRA-3].) Therefore, viewing the resentencing provision generally, and its look-back provision particularly, in the context of the spirit and purpose underlying the legislation as a whole, it is appropriate to resolve any ambiguity in favor of the more ameliorative, rather than the more punitive, construction. (Statutes § 321 [remedial statutes are to be construed liberally to carry out their intended reforms and to promote justice].)[6] And adopting an interpretation of the statute which permits defendants to age into eligibility for resentencing is more in keeping with the overall purposes of the DLRA-3, as well as with those of the DLRA and the DLRA-2, by allowing prisoners to distance themselves from their past misbehavior and demonstrate progress in rehabilitation.
Further, two subsections of the judicial diversion section of the DLRA-3, codified at CPL 216.00 (1) (a) and 216.05 (3) (a) (i), employ the same look-back eligibility concept in a contemporaneous, rather than an historical, fashion, suggesting the same construction for the parallel provision of section 440.46 (5) (a). *645 Those provisions exclude from participation in judicial diversion a defendant who “within the preceding ten years . . . has previously been” convicted of or adjudicated a youthful offender for “a violent felony offense” using language nearly identical to that used in CPL 440.46 (“a crime for which the person was previously convicted within the preceding ten years . . . which was a violent felony offense”). This use of the language in article 216 undoubtedly reflects a desire to prevent recent violent offenders from participating in the judicial diversion treatment alternative to incarceration, and supports the view that the Legislature intended courts to examine an offender’s recent behavior to determine eligibility for the various components of the reform scheme. Whether intended to assure the safety of the participants in drug treatment programs or to deny a benefit to those whose recent behavior has been violent and dangerous, the purpose of the measure could only be effected if the look-back period runs from the date of the application for judicial diversion. The same rationale would pertain equally to the look-back provision of the resentencing section, again supporting the view that the look-back period refers to the 10 years preceding the date of the resentencing application, not the date of the commission of the instant offense.
Thus, when viewed from these perspectives, the conclusion seems inescapable that the intended interpretation of the look-back provision is the one advanced by the defendants. Examination of the People’s arguments only buttresses this conclusion. D. References to “Predicate Felony Conviction” Elsewhere in the Penal Law
The People argue that the phrase “predicate felony conviction” in CPL 440.46 (5) should receive the same construction as it does when used in recidivist sentencing laws. (Penal Law § 70.04 [1] [a], [b]; § 70.06 [1] [a], [b].) This argument fails for several reasons.
When the Legislature has intended to establish a look-back period which runs from the date of commission of the instant offense back to the date of sentence of an earlier crime, it has stated so expressly. For example, with respect to a predicate violent felony conviction for a second violent felony offender, the Penal Law provides that “[s]entence upon such prior conviction must have been imposed before commission of the present felony” (Penal Law § 70.04 [1] [b] [ii]) and that “sentence must have been imposed not more than ten years before commission of the felony of which the defendant presently stands *646 convicted . . . (Penal Law § 70.04 [1] [b] [iv].) The statutory language with respect to a predicate felony conviction for a second felony offender is identical to that of Penal Law § 70.04 (1) (b) (ii) and (iv). (See Penal Law § 70.06 [1] [b] [ii], [iv].) In setting forth the criteria for a predicate felony conviction for a second child sexual assault felony offender, the statute incorporates by reference the look-back provisions of Penal Law § 70.06 (1) (b). (Penal Law § 70.07 [3].) Even the statute governing sentencing as a persistent felony offender clearly states the requirement that a “previous felony” conviction must have occurred prior to the commission of the present felony. (Penal Law § 70.10 [1] [b] [ii] [defendant must have been “imprisoned under sentence for such conviction prior to the commission of the (instant) felony”].)
These provisions each authorize the imposition of a more severe sentence for recidivists where the instant crime has followed the commission of earlier felonious conduct within the specified time period. In each case, the purpose of enhanced sentencing is to impose more severe punishment on persons who continue to commit serious crimes relatively soon after having been subjected to punishment for similar criminal conduct (see People v Johnson, 107 AD2d 763 [2d Dept 1985], citing People v Morse, 62 NY2d 205, 221 [1984]). Thus, enhanced sentencing is imposed on those defendants who commit the instant crime after having been convicted and punished for their felonious behavior during the specified interval (including, in the case of persistent felony offenders, their entire lifetimes [see Penal Law § 70.10 (1)]) leading up to the commission of the instant crime for which they are to receive punishment. The rationale for the more severe sentencing is that in each case, the defendant has failed to be rehabilitated between the time of the conviction and punishment for the earlier crime or crimes and the time of the commission of the instant crime.
In the case of the DLRA-3 resentencing law, by contrast, the aforementioned specific language referencing crimes committed and sentences imposed prior to the instant felony is absent. This omission is no accident. The DLRA-3, in general, and CPL 440.46, in particular, do not share either the purpose or rationale of these recidivist sentencing laws. The function of the resentencing provisions in each of the three DLRA statutes has been to reduce, rather than to extend, the eligible defendant’s sentence, in order to relieve drug offenders of the unduly harsh effects of the prior drug sentencing scheme. The rationale of the *647 drug resentencing provisions is to permit the defendant to demonstrate the rehabilitative progress made since the instant conviction as a ground upon which resentencing should be founded. Accordingly, DLRA § 23 sets forth resentencing hearing procedures, incorporated in the DLRA-2 and the DLRA-3, which allow an incarcerated defendant to present for court review of the inmate’s disciplinary records and program completion certifications while incarcerated on the current offense as a basis for granting resentencing relief.
Because section 440.46 (5) neither adopts the look-back language of the recidivist sentencing laws, nor shares their purpose or rationale, construction of its terms by reference to those statutes is entirely inappropriate. Its creation in a totally different context requires a totally different interpretation.
In summary, looking to the natural language, the purpose and the context of section 440.46 (5) (a), the court finds that the appropriate interpretation is that the look-back provision respecting a finding of a “predicate felony conviction for an exclusion offense . . . within the preceding ten years” should run from the date of the application for DLRA-3 resentencing.[7] E. The People’s Reliance on the Practice Commentary
The People’s remaining arguments in support of their position that the look-back period extends back in time from the date of the commission of the instant offense are no more persuasive. They rely on the author of the Practice Commentary to section 440.46, Professor Peter Preiser, who has concluded that the look-back period is determined by “measuring the ten year period by the interval between commission of the former and present crimes excluding time spent under incarceration.” (People v Keith Brock, indictment No. 5394/98, affirmation of Lisa DePasquale, Esq. in support of People’s response to petitioner’s motion for resentencing, dated Nov. 22, 2009, at 8, quoting Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, 2010 Electronic Update, CPL 440.46.) The Practice Commentary offers no support or explanation for this construction, however, which seems to conflate the statute’s look-back period with its tolling provision. In light of the numerous reasons for reaching the opposite conclusion, and the dearth *648 of reasoning supporting it, this court declines to adopt the interpretation of the Practice Commentary.
F. The People’s Contention that Defendants’ Construction of the Look-Back Period Would Encourage “Gamesmanship”
The People further contend that defendants’ construction of the look-back period, which includes time spent in prison for the instant drug offense, would invite “gamesmanship” by encouraging petitioners to wait as much as 10 years after the commission of their drug crime before seeking resentencing. This argument is illogical, however, as it would be perverse to preclude defendants from demonstrating their rehabilitative progress prior to filing an application. Indeed, as noted above, section 23 of the DLRA expressly contemplates that the reviewing court will consider both the inmate’s programmatic achievements and disciplinary violations while incarcerated on the drug charge for which resentencing is sought, and evidences no concern that a defendant may engage in good behavior while incarcerated in order to convince the court to grant resentencing.
G. The People’s Contention of Inapplicability of DLRA-3 Ameliorative Policies to Predicate Violent Felony Offenders
The People further contend that the ameliorative policies of the DLRA, the DLRA-2 and the DLRA-3 should not apply to predicate violent felony offenders. (People v Gilberto Sosa, indictment No. 07375/02, supplement to the affirmation of Lais Washington, Esq., in response to the defendant’s motion for DLRA resentencing, Jan. 6, 2010, at 2.) This position misconstrues the intention of the Legislature, however, and is unsupported by the statutory language of any of the three reform statutes.
Violent felony offenders have been granted resentencing under both the DLRA and the DLRA-2, and there is nothing in CPL 440.46 which suggests that they were to be barred from similar relief on their class B drug felony convictions. Were all applicants with past violent felonies intended to be disqualified from relief, the language of section 440.46 would most certainly have clearly so provided.
H. The People’s Contention that this Court is Affording Undue Deference to DOCS’ Interpretation of the Look-Back Provision
Citing the Court of Appeals recent decision in Roberts v Tishman Speyer Props., L.P. (13 NY3d 270, 285 [2009]), both prosecutorial offices contend that in correspondence dated December *649 4, 2009 from this court to all parties (the Dec. 4, 2009 letter) reporting advice received from the Office of Sentencing Review of the Department of Correctional Services (DOCS) regarding its understanding of the look-back provision, this court has afforded undue deference to that agency’s interpretation of the statutory look-back period of CPL 440.46 (5). (People v Keith Brock, indictment No. 5394/98, letter from Lisa DePasquale, Esq., OSNP, dated Dec. 7, 2009, at 1; People v Gilberto Sosa, indictment No. 7375/02, letter from Daniel M. Colgan, Esq., DANY, dated Dec. 14, 2009.) This reading of the court’s letter misapprehends its message and its purpose.
The December 4, 2009 letter was purely informational in nature, intended to make the parties aware of advice received by the court from DOCS, and does not reflect any deference accorded by the court to that agency’s interpretation of the statutory look-back period.[8] Indeed, as this court has previously observed when construing the DLRA-2 and considering DOCS’ interpretation of its provisions, where the court is called upon to interpret a statute, rather than reviewing the action of the administrative agency in enforcing its own regulations, the agency “bears no administrative or legal responsibility and, accordingly, is due no particular deference.” (People v Quinones, 11 Misc 3d 582, 602 [Sup Ct, NY County 2005].) As the Court of Appeals has stated, where “the question is one of pure statutory reading and analysis . . . there is little basis to rely on any special competence of or expertise of the administrative agency.” (Roberts v Tishman Speyer Props., L.P., 13 NY3d at 285, quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980].) Accordingly, the People’s concern as to this court’s reliance on the views of DOCS is unwarranted.
I. The People’s Remaining Arguments
This court has considered the remaining arguments advanced by the prosecutors and finds them unpersuasive. In this court’s view, the look-back provision for exclusion offense disqualification for DLRA-3 resentencing runs retrospectively, 10 years from the date of filing of the application for resentencing.
*650 III. Application of the Section 440.46 (5) (a) Look-Back Rule to the Defendants
Having determined that CPL 440.46 (5) (a) provides that the look-back period for potential exclusion offenses is the period within the 10 years preceding the date of filing of the application, as tolled by any time the defendant was incarcerated for any reason between the time of the commission of the potential exclusion offense and the time of the commission of the instant offense, the court will now separately analyze the application of the look-back provision as to each defendant, based upon pertinent information as to each defendant’s potential exclusion offense and instant drug offense or offenses.
1. Claude Danton
Defendant Claude Danton filed an application for CPL 440.46 resentencing on October 7, 2009. Danton seeks resentencing with respect to two separate class B felony convictions, each of which will be analyzed separately. Defendant’s potential exclusion offense under CPL 440.46 (5) (a) with respect to both convictions is his conviction by plea of guilty on September 14, 1989 of attempted robbery in the second degree (Penal Law §§ 110.00, 160.10), a class D violent felony offense (Penal Law § 70.02 [1] [c]).
Under indictment No. 5759/03, defendant was convicted after a jury trial of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]). The period between the date of the filing of the resentencing application (October 7, 2009) and the date of conviction (sentence) for the potential exclusion offense (September 14, 1989) is 20 years and 21 days, or 7,328 days.
From this gross result, the court then subtracts any time periods during which Danton was incarcerated, for any reason, between the time of the commission of the potential exclusion offense, in this case, May 16, 1988, and the date of the commission of each of the instant drug offenses. The first instant drug offense was committed on July 26, 2003.[9]
Adding the number of days defendant spent in incarceration between the commission of the potential exclusion offense and the first instant offense, the total number of days is 4,386, or 12 *651 years and 6 days. Subtracting 4,386 days from the 7,328 days between the filing of the application and the conviction for the potential exclusion offense, the result is 2,942 days, or 8 years and 20 days. As this time period is well within the 10-year look-back period, the court finds that Danton’s 1989 conviction is an exclusion offense within the meaning of CPL 440.46 (5) (a) with respect to his conviction and that therefore defendant Danton is ineligible for resentencing on his conviction under indictment No. 5759/03.
With respect to Danton’s second conviction, under indictment No. 620/04, defendant pleaded guilty to criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]). In calculating the look-back period for the second offense, the time period between the date of the filing of the application and the conviction for the potential exclusion offense remains the same, 7,328 days. With respect to the tolling period, the date of the commission of the potential exclusion offense, May 16, 1988, remains the same, but the date of the commission of the second instant offense is October 14, 2003. The tolling period for the second crime would include all of the inearceratory time applicable to the earlier offense, i.e., 4,386 days, plus two subsequent time periods during which Danton was in the custody of New York City Department of Correction, August 2, 2003 through August 20, 2003, or 18 days, and September 11, 2003 through September 17, 2003, or six days. Adding this 24-day period to the original lock-up period produces a total lock-up period of 4,410 days. Subtracting the lock-up tolling period of 4,410 days from the overall period of 7,328 days, the result is 2,918 days, or 7 years, 363 days. As this look-back period is within the 10 years preceding the date of filing of the application, defendant’s 1989 violent felony is an exclusion offense with respect to the second conviction as well, and he is therefore similarly ineligible for CPL 440.46 resentencing on indictment No. 620/04.
Danton argues, however, that he does not have an exclusion offense because he does not have a “predicate felony conviction” within the meaning of the term as used in the preamble to CPL 440.46 (5). He maintains that the phrase “predicate felony conviction” for CPL 440.46 purposes is a “term of art,” limited to describing a prior conviction on which a defendant was adjudicated a recidivist felon either in the instant drug case or in another case. He contends that in the absence of any evidence that he had been predicated on the attempted robbery conviction in this or any other case, he has no “predicate felony conviction” constituting an exclusion offense.
*652 This argument fails, as it relies on a tortured, reading of the statutory language of CPL 440.46 (5). Danton reads the term “predicate felony conviction” in subdivision (5) to mean “a prior violent felony or merit time-ineligible offense for which the defendant had previously been adjudicated.” Were that its intent, the Legislature would likely have said so, as it did in subdivision (5) (b). (Cf CPL 440.46 [5] [b] [“for which the person has previously been adjudicated”]; see Statutes § 74, Comment [“Generally, a court cannot by implication supply in a statute a provision which is reasonable to suppose the Legislature intended intentionally to omit”].)
Additionally, if “predicate felony conviction” were meant to be coterminous with the term as used in article 70 of the Penal Law, there would have been no reason for the statute to define as it does in subdivision (5) (a) the particular crimes which are to be excluded. Danton’s reading would create the impermissible result of rendering much of subdivision (5) (a) surplusage. (See Statutes § 98 [“effect and meaning must, if possible, be given to the entire statute and every part and word thereof’].)
Danton offers no legal basis for his argument, which, by incorporating language from Penal Law article 70 for these purposes, completely contravenes his eschewing of that approach for purposes of interpreting the look-back provision. As explained in section II (D) of this opinion, I believe that section 440.46 is not to be interpreted by reference to article 70. Accordingly, “predicate felony conviction” has its natural meaning, and includes an earlier felony conviction, regardless of whether the defendant had been previously adjudicated a predicate felon based upon that conviction, and defendant Danton’s prior violent felony conviction can constitute an exclusion offense for CPL 440.46 (5) (a) purposes.
2. Keith Brock
Defendant Keith Brock filed an application for CPL 440.46 resentencing on October 7, 2009. He was convicted of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]), a class B felony. Previously, on March 16, 1979, defendant had been convicted by plea of guilty of robbery in the second degree (Penal Law § 160.10), a class C violent felony offense (Penal Law § 70.02 [1] [b]) and a potential exclusion offense under CPL 440.46 (5) (a). The period between the date of the filing of the resentencing application (October 7, 2009) and the date of conviction for the potential *653 exclusion offense (March 16, 1979) is 30 years, 6 months and 21 days, or 11,151 days.
From this gross result, the court then subtracts any time periods during which Brock was incarcerated, for any reason, between the date of the commission of the potential exclusion offense, here, June 6, 1978 and the date of the commission of the instant offense, June 26, 1998.
Adding the number of days defendant spent in incarceration between the commission of the potential exclusion offense and the instant offense, the total number of days of Brock’s lock-up time is 4,340 days, or 12 years, 220 days. Subtracting the 4,340 days of lock-up time from the 11,151 days of Brock’s look-back period between the filing of the application and the conviction for the potential exclusion offense, the result is 6,811 days, or 18 years, 241 days. As this time period is well outside the 10-year look-back period, the court finds that Brock’s 1979 conviction is not an exclusion offense within the meaning of CPL 440.46 (5) (a), and that therefore defendant Brock is eligible for resentencing with respect to the instant offense.
3. Gilberto Sosa
Defendant Gilberto Sosa filed an application for CPL 440.46 resentencing on October 7, 2009. On March 5, 2003 he was convicted of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) and criminal possession of a controlled substance in the fourth degree (Penal Law § 220.09 [1]). Previously, on November 27, 1995, defendant had been convicted by plea of guilty of criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]), a class D violent felony offense (Penal Law § 70.02 [1] [c]) and a potential exclusion offense under CPL 440.46 (5) (a). The period between the date of the filing of the resentencing application (October 7, 2009) and the date of conviction for the potential exclusion offense (November 27, 1995) is 13 years, 289 days, or 5,034 days.
From this gross result, the court then subtracts the time during which Sosa was incarcerated, for any reason, between the time of the commission of the potential exclusion offense, here, July 30, 1995 and the date of the commission of the instant offense, August 24, 2002.
Adding the number of days defendant spent in incarceration between the commission of the potential exclusion offense and the instant offense, the total number of days is 1,445, or 3 years, 350 days. Subtracting 1,445 days from the 5,034 days between *654 the filing of the application and the conviction for the potential exclusion offense, the result is 3,589 days, or 9 years, 304 days. As this time period is just under the 10-year look-back limit, Sosa’s 1995 conviction would be an exclusion offense within the meaning of CPL 440.46 (5) (a).
Defendant argues, however, that at the time he filed his application on October 7, 2009, he did so under the mistaken belief that his 1995 conviction was for a nonviolent felony offense and would not constitute an exclusion offense under CPL 440.46 (5).[10] Defendant now seeks to have this court deem January 7, 2010, which was the date of filing of his most recent submission on the instant motion, as the date of filing of his application. In the alternative, defendant has stated that it is his intention to withdraw his application and immediately file a new application. Were the court to deem this application filed January 7, 2010, an additional 92 days would be added to the period of time between the date of filing of the application and the date of conviction for the potential exclusion offense, resulting in a total look-back period of 5,126 days. Subtracting 1,445 days of lock-up time from that total results in 3,681 days, or 10 years, 31 days, which is outside the statutory look-back period and would render him eligible for resentencing. Under these circumstances, and in the absence of any opposition from the People, this court hereby deems defendant Sosa’s application to have been filed as of January 7, 2010. Therefore, defendant Sosa is eligible for resentencing with respect to the instant offense.
IV. Conclusion
For the reasons stated, this court finds that the 10-year look-back period of CPL 440.46 (5) runs retrospectively from the date of the filing of the defendant’s application for DLRA-3 resentencing. Accordingly, defendant Claude Danton is ineligible for resentencing on either of his class B drug felony convictions.
*655 Defendants Keith Brock and Gilberto Sosa are each eligible for resentencing on their respective felony drug convictions in their instant cases. This court will issue further orders in their cases respecting their resentencings as required by GPL 440.46 (3) and section 23 of the DLRA.
[Portions of opinion omitted for purposes of publication.]

. On January 22, 2010 this court resolved this issue in an oral ruling. This written decision and order further explains and supplants that ruling. The remaining issues presented in each case will be decided in separate decisions and orders to follow, to the extent necessary.

. The Danton and Sosa cases are being prosecuted by the Office of the New York County District Attorney (DANY) while the Brock case is being handled by the Office of the Special Narcotics Prosecutor of the City of New York (OSNP).

. The court notes, however, that at least three courts have held that the “look-back” period is 10 years preceding the date of filing of the resentencing *642 application, excluding incarceration time between commission of the instant offense and commission of the potential exclusion offense. (People v Roman, 26 Misc 3d 784, 785-788 [Sup Ct, Bronx County, Dec. 4, 2009, Mogulescu, J.]; People v Williams, indictment Nos. 9280/99, 5364/04, Sup Ct, NY County, Dec. 23, 2009, Pickholz, J., at 10-11; People v Brown, 26 Misc 3d 1204[A], 2010 NY Slip Op 50000[U], *5-14 [Sup Ct, NY County, Jan. 4, 2010, Conviser, J.])

. See Correction Law § 865 (1), which expands shock eligibility to include persons under the age of 50 but excludes persons with prior convictions for violent felony offenses (Penal Law § 70.02) or merit-time-ineligible offenses (Correction Law § 803 [1] [d] [ii]).

. This provision might conceivably apply to defendants who are resentenced under CPL 440.46, as well, in that while CPL 440.46 (1) provides that eligible defendants can only be resentenced to determinate terms, it also provides that the resentencing be done in accordance with Penal Law § 70.70, which, as amended, now provides that determinate sentences may be ordered to be served as parole supervision pursuant to CPL 410.91.

. See also People v Green, 68 NY2d 151, 153 (1986) (“the substantive power to prescribe . . . punishment for a criminal offense is exclusively legislative . . . and, if two constructions of a criminal statute are plausible, the one more favorable to the defendant should be adopted in accordance with the rule of lenity . . . .” [citation omitted]).

. As was the ease in People v Roman (supra), People v Williams (supra) and People v Brown (supra), the parties before this court in the instant cases all agree that the date of the prior conviction or predicate felony conviction is the date on which sentence was imposed in each case.

. The letter expressly acknowledged that “[t]he views of DOCS are not, of course, dispositive in resolving these motions” and invited further comment on them from the parties. (Dec. 4, 2009 letter, at 2.)

. Calculations of the total amount of lock-up time spent by each defendant between the date of the commission of the potential exclusion offense and the date of commission of the instant offense have been omitted from this edited version of the opinion.

. At the time she filed this motion, defense counsel for Sosa had understood, based upon her review of a certifícate of conviction issued by the clerk of the court, that her client’s 1995 weapons possession conviction was not a violent felony offense. Subsequent examination of the court file in that case has demonstrated that the conviction was for criminal possession of a weapon in the third degree under CPL 265.02 (4), which was a violent felony offense at the time of its commission on July 30, 1995. (See Penal Law § 70.02 [1] [c] [L 1978, ch 481, § 3, eff Sept. 1, 1978, as amended by L 2007, ch 7, § 32, eff Apr. 13, 2007].)