*709 OPINION OF THE COURT
Ralph A. Fabrizio, J.
The issue in these two cases is whether the court should grant the defendant’s application to be placed into the residential drug and alcohol treatment program recommended by Bronx Treatment Alternatives to Street Crime (TASC) through judicial diversion (see CPL art 216), over the People’s objection. The application is denied.
The defendant is charged under indictment No. 2841/09 with, inter alia, criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [12]). It is alleged in this case that on July 3, 2009, at about 11:10 p.m., the defendant was seated in the driver’s seat of a 1998 Lincoln Town Car in the vicinity of University Avenue and West Tremont Avenue, in Bronx County, and that a bag of crack cocaine, which had an aggregate weight in excess of one eighth of an ounce, along with a small amount of marihuana were inside the car. Another individual in the car was indicted as the defendant’s accomplice. About a month later, on August 9, 2009, the defendant and three other individuals were arrested and charged with criminal sale of a controlled substance in or near school grounds. (Penal Law § 220.44 [2].) In that case, indictment No. 3320/09, the defendant is alleged to have handed a bag of heroin to an undercover police officer in exchange for money in front of 1895 University Avenue in Bronx County. It is also alleged that several accomplices directed the undercover officer to the defendant; one told the officer to “try the car” to see if the defendant was there. The defendant exited 1895 University Avenue just prior to the alleged sale; he also lives in that building.
Several months after being arraigned on the indictments, the defendant applied for judicial diversion pursuant to CPL article 216. The defendant was first screened for possible consideration for judicial diversion by Fquira Johannes, an Addiction and Substance Abuse Counselor credentialed by the Office of Alcoholism and Substance Abuse Services pursuant to Mental Hygiene Law § 19.07. Ms. Johannes is the Diversion Coordinator for this court part.[1] The defendant told Ms. Johannes that he has a 20-year history of weekend binges of alcohol consumption, and has been a “sporadic” user of cocaine. Ms. Johannes *710 recommended that the defendant be evaluated for potential placement in drug and/or alcohol treatment. In an exercise of its discretion, the court ordered an alcohol and substance abuse evaluation pursuant to CPL 216.05 (1), to determine whether he had a history of and/or current dependence on alcohol or a controlled substance. The defendant was evaluated by Yolanda Cardona, the director of the Bronx TASC program, a court-approved entity. (See CPL 216.00 [2].) The information obtained by Ms. Cardona was input into a correctional offender management profiling for alternative sentences (COMPAS) computer software program used by TASC. A COMPAS report was generated; that is the written evaluation report given to the court, the People, and defense counsel, as required under CPL 216.00 (2).
In the report, dated April 15, 2010, Ms. Cardona concluded that it was “highly probable that [the defendant] has drug or alcohol problems and needs substance abuse treatment intervention.” Based upon this assessment, Ms. Cardona recommended “long term residential treatment.” The People opposed placing defendant in judicial diversion, citing the defendant’s long criminal history, which consists exclusively of felony drug sale and possession convictions. They requested to be heard pursuant to CPL 216.05 (3) (a).
Upon receipt of the report on April 16, 2010, the court noted that the defendant had not been given a urine test to determine whether he had ingested any illicit substances at the time of his alcohol and substance abuse evaluation, and ordered such a test be conducted that day. The results of that test disclosed no evidence of any illicit substance. On May 12, 2010, the People and the defendant had an opportunity to present evidence and make arguments to the court.
Findings of Fact
Ms. Cardona’s basis for finding that the defendant has a long-term alcohol and cocaine addiction problem requiring an 18-to-24-month residential treatment program is predicated almost entirely on what the defendant told her during the psychosocial evaluation.[2] The defendant said he has used cocaine since the age of 28, which, given his current age, would have been *711 sometime after December 1999. He also reports using alcohol since he was a teenager. The frequency of alcohol and/or cocaine use is not disclosed in the COMPAS report, but Ms. Cardona told the court that the defendant reported his cocaine and alcohol use to be frequent, and this is part of the reason she recommended long-term residential treatment. The defendant indicated during the evaluation that he believed “his current and past legal problems are at least partly due to drug or alcohol use,” and said he believed that he “would benefit from substance abuse treatment at this time.”
The defendant was being supervised on postrelease supervision by the Department of Parole when he was arrested on July 3, 2009. He was not incarcerated for violating the conditions of that supervision until after the August 9, 2009 arrest. Ms. Car-dona told the court that the defendant said he had not used cocaine or drank alcohol since July 2009. This information is not contained in the report, but it contradicts at least in part a statement attributed to the defendant in that report indicating “he was using alcohol and drugs at the time of the current offense.” However, either statement is consistent with the random negative toxicology results on April 16, 2010. According to the defendant, he has been drug and alcohol free, without any treatment or intervention, for more than 10 months. He is no longer incarcerated on either of these cases; according to the defendant, his parole revocation confinement ended sometime in January 2010, at the conclusion of the maximum term of his sentence. He has been at liberty, on bail, since January 11, 2010.
The defendant also told Ms. Cardona that a parole officer placed him in an alcohol treatment program, about two years ago. Ms. Cardona did not contact the parole officer prior to preparing the report; no information directly obtained from that officer was provided to the court. Defense counsel, however, produced a certificate showing that the defendant had completed an educational “Stop DWI” program in 2008, during his period of postrelease supervision, and said that the defendant’s parole officer ordered him to attend this program. There is no evidence that the defendant has ever been charged with operating a motor vehicle while under the influence of alcohol. The defendant also told Ms. Cardona that he had been in a residential treat *712 ment program at some point about 10 years ago, which he believed might have been at Samaritan Village. Ms. Cardona stated that even if the defendant were certain of the name of the program, she would be unable to access records from that period.
The defendant also said that he was employed at the time of his arrests, and that he continues to be employed at the present time. In fact, the defendant works at two different jobs; Ms. Cardona obtained a letter verifying one of the two jobs. According to the report, the defendant said that he has never “been fired from a job,” and that he “feels he needs no additional training of career skills.”
The People challenged one statement attributed to the defendant in the report, in which he said that “few of his friends and associates have ever been arrested,” pointing out he was indicted with accomplices in each of the current cases. The People directed the court to the defendant’s criminal record, which they said was the primary reason they objected to his placement into treatment through judicial diversion. That record consists of the following: a June 30, 1994 conviction in Supreme Court, New York County, for criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]), for which the defendant was sentenced to an indeterminate prison term of from 1 to 3 years; an October 10, 1997 conviction in Supreme Court, Bronx County, for attempted criminal sale of a controlled substance in the third degree (Penal Law §§ 110.00, 220.39 [1]), for which the defendant was sentenced as a second felony offender to 372 to 7 years’ incarceration; a June 6, 2001 conviction in Supreme Court, Bronx County, for attempted criminal sale of a controlled substance in the third degree (Penal Law §§ 110.00, 220.39 [1]), for which the defendant was once again sentenced to 372 to 7 years’ incarceration; and a January 13, 2006 conviction in Supreme Court, New York County, for criminal possession of a controlled substance in the fourth degree (Penal Law § 220.09 [1]), for which the defendant was sentenced to a determinate term of three years, followed by two years’ postrelease supervision. The People did not have the underlying facts of any of these convictions, including the amount or weight of narcotics the defendant possessed and/or sold. However, the two prior felony narcotics possession convictions include, as an element, that the defendant possessed the narcotics with intent to sell them to another person. These four felonies represent the defendant’s entire criminal record.
*713 The court asked how frequently the defendant tested positive for drug or alcohol use during the random screenings conducted while he was on parole and/or postrelease supervision in the 16 years following his first felony conviction. Counsel said the defendant recalled one positive result during a random toxicology screening sometime while he was under parole supervision, which had to be sometime prior to July 2009, although the defendant could not remember the exact date.
Conclusions of Law
CPL article 216, included in the Drug Law Reform Act of 2009, is part of the latest effort by the Legislature to encourage courts and prosecutors to consider placing individuals who commit certain felony narcotics possession and sale crimes in order to financially support their drug or alcohol addictions into a substance abuse program, rather than sending them to jail. The Drug Reform Act of 2004, a precursor to CPL article 216, was also enacted, in part, to provide for shorter sentence for addicted individuals who sell drugs to support their addiction. (See Comments of Senator Sabini, Senate Debate Transcripts, Dec. 7, 2004, at 9293 [“Drug addiction is a disease, a disease that needs to be treated. And this is sort of a start at reforming the sentencing laws”], quoted in People v LaFontaine, 9 Misc 3d 434, 438 n 6 [Sup Ct, NY County 2005], revd 36 AD3d 474 [1st Dept 2007].) In 2009, the Legislature entrusted the judiciary with the power to not only impose much lower, and sometimes even nonincarceratory sentences in felony cases in which addicts have been convicted of selling narcotics, but also “diverting” these individuals from any prison sentence, and placing them into treatment, without first obtaining the prosecutor’s consent. However, when the People object to a defendant being placed in judicial diversion following a recommendation by the court-approved entity that conducted the requisite drug and alcohol evaluation, they are entitled to be heard as to why they believe judicial diversion is inappropriate. (CPL 216.05 [3] [a].)
After such a proceeding is held, and all parties have had their opportunity to be heard, the court must first determine whether a defendant is “eligible” for a drug program. (CPL 216.00 [1].) This is essentially a legal determination, based on the current charges as well as the defendant’s criminal history. If a defendant is legally ineligible, the inquiry is complete, and the application should be denied.
To the extent that the prosecutor’s repeated references to the defendant’s criminal record can be read to suggest that the de *714 fendant is not eligible, the fact remains that neither his record of convictions, nor the fact that he is currently facing not one, but two separately indicted class B felony narcotics cases, is relevant to the court’s eligibility determination. A defendant is eligible to be considered for judicial diversion when, inter alia, that defendant is “charged . . . with a class B, C, D or E felony offense defined in article two hundred twenty ... of the penal law.” (CPL 216.00 [1].) The Legislature did not specifically deem an individual ineligible for consideration for judicial diversion where such person has more than one indictment. In terms of a defendant’s criminal history, a prior conviction for a “violent felony offense” or a “class A felony defined in article two hundred twenty of the penal law” will render an otherwise eligible defendant ineligible for judicial diversion if such conviction took place within the 10 years prior to the current charges. (CPL 216.00 [1] [a].) A defendant with multiple prior felony convictions will be ineligible if previously adjudicated a “second violent felony offender ... or a persistent violent felony offender. “ (CPL 216.00 [1] [b].) A defendant who is ineligible for judicial diversion based on the specific predicate convictions enumerated in the statute “may become an eligible defendant upon the prosecutor’s consent.” (CPL 216.00 [1].) Thus, someone like this defendant, who has four nonviolent felony narcotics sale and possession with intent to sell convictions, is legally eligible for judicial diversion, regardless of whether the prosecutor consents.
The fact that the defendant is legally eligible does not mean that he must be placed in judicial diversion. There is, of course, no due process right to drug treatment. (See e.g. Palmieri v Cuomo, 170 AD2d 283 [1st Dept 1991]; People v Woods, 192 Misc 2d 590, 596 [Rochester City Drug Treatment Ct 2002].) Article 216 itself merely provides a mechanism for defendants charged with certain crimes and who have specific types of criminal records to apply to be considered for placement in drug treatment. The Legislature left the ultimate decision about whether an eligible defendant is placed in treatment through judicial diversion entirely to the court’s discretion, even in cases where the prosecutor does consent. After considering all of the factors enumerated in CPL 216.05 (3) (b), the court declines to exercise its discretion and place the defendant in drug treatment through judicial diversion.
At the outset, it is not clear that the defendant has the requisite “history of alcohol or substance abuse or dependence” *715 for placement in judicial diversion. (CPL 216.05 [3] [b] [ii].)[3] While the defendant told Ms. Cardona not only that he has used both cocaine and alcohol over a long period of time, but that he has also been in both alcohol and drug treatment, other information before the court is not consistent with those statements. For example, there is no confirmation that the defendant, who says he started using cocaine in 1999 or 2000, attended a residential treatment program at about that same time. This would be of help in this case. According to the defendant’s criminal record, he was sentenced to SVa to 7 years’ incarceration in 1997, had a warrant issued for his arrest probably while under parole supervision in September 1999, was returned to court on that warrant more than two years later, in April 2001, and was incarcerated from June 25, 2001 until March 3, 2004. This time line is not consistent with his claim about when he was in residential treatment at Samaritan Village. While he did attend a short-term “Stop DWT” program about two years ago, it is not at all clear whether the defendant was referred for actual treatment after he received the educational information about the dangers of alcohol use, particularly when the person chooses to operate a motor vehicle, these programs provide.
There is also no evidence that the defendant ever had more than one potential positive toxicology result during the many years he has been under parole supervision. According to his criminal record, he was paroled in 1996 and discharged without incident in 1997. After he was paroled in 2004, he was under parole supervision for nearly two years, and that parole was revoked after he was convicted of committing yet another drug felony. He was paroled again on February 4, 2008, and was violated only after his second felony arrest while on that parole. If he were truly addicted to or dependent on cocaine as he claimed during his interview, it would have been expected that more than one random drug screening would have yielded positive results. The defendant’s statements to Ms. Johannes during the preliminary screening that his cocaine use was “spo *716 radie” is consistent with the lack of positive toxicology results. And that is also consistent with the fact that he holds down multiple jobs, says he has sufficient job skills, and has never once been fired. This type of stability strongly indicates that he is more of a recreational drug user who may occasionally “binge” on alcohol.
To the extent that the People’s argument can be read to suggest that the defendant’s criminal history would also not support Ms. Cardona’s conclusion that he has an addiction or dependence on cocaine or alcohol, that argument does have some validity. The defendant’s criminal record not only shows that he is a dealer of narcotics, but there is a glaring absence of any arrests or convictions for crimes in which cocaine was possessed for individual use. In fact, there is not a single misdemeanor arrest or conviction noted on his criminal record. Of course, the court understands that a person can be an addict and/or substance dependent and never have a positive random toxicology test, or never attend a treatment program, or never be arrested for “addict-type” crimes such as possession of a crack pipe or hypodermic needle, shoplifting, criminal mischief, car theft, trespassing, or DWI. But the absence of even one of these facts in this case hardly supports the defendant’s claim that he has a cocaine and alcohol addiction or dependence, let alone one serious enough to justify placing him into a long-term residential treatment program.
Even if the court were to credit the defendant’s opinion that he had, or has, an addiction to either cocaine or alcohol, his other statements do not demonstrate that such addiction was “a contributing factor to [his] criminal behavior” in these cases. (CPL 216.05 [3] [b] [iii].) The defendant’s statements that he stopped using cocaine and alcohol in July 2009, which was prior to his arrest for selling heroin in August 2009, belie his claim that he believes his “current or past legal problems are at least partly due to drug or alcohol use.” Moreover, there is no reason to believe that even if the defendant did have a cocaine and alcohol addiction or dependence prior to July 2009, “the defendant’s participation in judicial diversion could efficiently address such abuse or dependence.” (CPL 216.05 [3] [b] [iv].) The defendant reports that he has been able to stay “clean and sober” for nearly a year, and perhaps even longer. A random drug screening in April 2010 showed no evidence of cocaine or alcohol. Even if he has used cocaine and alcohol during his life, his “ability to stop using drugs without negative health problems and *717 prior to entering treatment [indicates] . . . that the defendant’s reported drug history was exaggerated.” (People v Coco, 28 Misc 3d 563, 564 [Sup Ct, Kings County 2009, Ferdinand, J.] [defendant claimed to have lengthy cocaine, alcohol, and marihuana use].) Thus, placing the defendant in the recommended long-term residential treatment program would not be an efficient way to address his purported level of alcohol or cocaine use. Courts are asked to consider placing individuals with clinically diagnosed narcotics and/or alcohol addiction or dependence problems into treatment programs, not recreational users of these substances. (CPL 216.00 [2] [a].)
Finally, it appears that “institutional confinement of the defendant is or may ... be necessary for the protection of the public.” (CPL 216.05 [3] [b] [v].) At bottom, the defendant’s record indicates that he is a career drug dealer for profit, with access to large quantities of narcotics. While, as noted, this record does not make him legally ineligible for judicial diversion, he is not the “low-level dealer selling drugs to support his own habit” that the Legislature envisioned would be the type of person a court would place in treatment under CPL article 216. (People v Coco at 565; cf. People v Danton, 27 Misc 3d 638 [Sup Ct, NY County 2010].) Long periods of incarceration have not deterred the defendant from engaging in serious narcotics crimes. He appears to be part of the lucrative culture of drug dealers who risk this type of criminal behavior for the high pay days they receive by peddling narcotics to the many sadly addicted members of our community. After all, a defendant who continuously introduces narcotics into his own community for profit cannot be said to be committing “victimless crime[s].” (See People v Insignares, 109 AD2d 221, 232 [1st Dept 1985].)
In short, after considering all of the information presented by the parties, the court declines to exercise its discretion and place this defendant into judicial diversion. These cases will proceed to trial.

. Ms. Johannes has personally screened hundreds of defendants who have applied for judicial diversion since CPL article 216 went into effect in October 2009.

. Self-reporting is a valuable and indispensable tool in any psychosocial evaluation of a defendant being considered for drug court. However, where other sources of information are available to confirm or corroborate a defendant’s claims, they should be gathered and presented to the court. This is *711 important not only in determining whether a defendant is an appropriate candidate for court-ordered treatment, but also in assessing the appropriate treatment modality (i.e., residential vs. nonresidential) for a particular individual with a substance abuse problem.

. The written report does not state whether the defendant has a substance abuse or alcohol abuse or dependence problem that meets the criteria of the DSM-W as required by CPL 216.00 (2) (a). The People do not challenge his placement into judicial diversion for this reason; however, for the purposes of this decision, the court will assume that Ms. Cardona found that the substance abuse and/or alcohol dependence problem she reports meets this legal and clinical criteria. A defendant who does not have an alcohol or substance abuse problem that supports the requisite DSM-IV definition is not suitable for judicial diversion.